# CHARLESTON.

## NICHOL v. HUNTINGTON WATER CO.

### Submitted February 14, 1903.  Decided April 25, 1903.

1.  CITY—*Water Co.—Damages.*

    A water supply company, occupying the streets of a city, under an ordinance, requiring it to maintain a certain number of fire hydrants, and providing for payment of an annual rental therefor by the city out of its revenues derived from taxa-

tion, is not liable in an action, either *ex contractu* or *ex delicto*, for the loss of a building by fire, which could have been saved but for its failure to have the mains and hydrants suplied with sufficient water for fire protection at the time of the fire.  (p. 351).

2.  CITY—*Contract.*
    Recovery for such loss cannot be had by the owner of the property upon a contract between his tenant and the water company to keep the building supplied with water for "domestic, sanitary and fire purposes."  (p. 352).

Error to Circuit Court, Cabell County.

 Action by Frances L. Nichol against the Huntington Water Company.  Judgment for defendant, and plaintiff brings error.

*Affirmed.*

WILLIAMS, SCOTT & LOVETT, for plaintiff in error.

SIMMS & ENSLOW, for defendant in error.

POFFENBARGER, JUDGE:

Frances L. Nichol complains of a judgment of the circuit court of Cabell County, sustaining a demurrer to her declaration against the Huntington Water Company, a private corporation, and dismissing her action, upon her declination to amend. She was the owner of a building, called the Hotel Adelphi, which was totally consumed by fire July 2, 1901, which, when first discovered, was confined to the top of the building, and did not burst through the roof into a blaze until sometime after the arrival of the city firemen, with hose and appliances suitable and sufficient to have extinguished the fire and saved the building, had there been water in the pipes and hydrants of the defendant company.

Said declaration further avers the authority of the city of Huntington under its charter to make regulations guarding against danger or damages by fire to itself and owners of property within its limits, by erecting, authorizing, or prohibiting the erection of water works in or near the city; that it had passed an ordinance authorizing certain individuals to construct, maintain and operate water works to supply the city and its inhabitants with water for fire and domestic purposes; that

said franchise or contract had been assigned by the individuals, to whom it was granted, to the defendant company; that, in pursuance of the authority given by said ordinance, said company constructed said water works and was operating the same at the time of said fire; that, by contract contained in said ordinance as accepted, eighty-four hydrants were located and constructed by the company for fire protection, in consideration of an annual rental of three thousand dollars to be paid by the city; that a number of these hydrants were located near enough to said hotel to have been available for its protection had they been supplied with water; that all taxable property in said city, including the said hotel property, had been assessed with taxes for the payment of said rental, which taxes, assessed upon said property of the plaintiff, had been paid; that, by its acceptance of said franchise, it became and was the duty of the defendant company to keep all of said hydrants in good order and constantly supplied with sufficient water for fire service; that plaintiff's tenants then in possession of said hotel, by payment of the sum of ———— dollars had acquired the right to use, and the defendant company undertook and promised to supply, water at said hotel, for the then current quarter for domestic, sanitary and fire purposes, in consideration of the payment of said sum; that the contract, so made between the said city and W. S. Kuhn, and assigned to the defendant company, was made for the use and benefit of all the property owners and inhabitants of said city, including the plaintiff who then owned said hotel; that, by virtue of the premises, it was the duty of the defendant to keep a constant and sufficient supply of water in its pipes and hydrants to afford, at all times, the greatest possible protection to all property within the city; and that, at the time of said fire, the defendant had persistently, carelessly and negligently, and not because of unavoidable accident, refused and failed to furnish its mains and hydrants with any water with which to extinguish the fire, and so refused, neglected and failed to furnish any water to the said hotel, by reason of which tortious and negligent conduct, her said building was wholly destroyed by said fire, whereby she suffered damages amounting to thirty thousand dollars.

The writ commands the defendant to be summoned to answer the plaintiff "of a plea of trespass on the case." The declara-

tion recites that it has been summoned to answer in the same way.

The allegations of the declaration strongly import a purpose to state the cause of action founded upon contract, and, for the plaintiff in error, the declaration is so treated in the brief. For the defendant in error, it is insisted that the declaration is for a tort, based upon a breach of duty arising from the two alleged contracts, one between the city and the defendant, and the other between the plaintiff and the defendant. As the all important question is, whether a cause of action, either *ex contractu* or *ex delicto,* is, or can be, stated upon the facts disclosed by the declaration, it is unnecessary to give time and labor to an attempt to settle the controversy concerning the character of the declaration. If it shall be found that a good cause of action cannot be predicated upon the facts, such an attempt would not only be supererrogant, but might result in an erroneous determination of a doubtful question and the making of a bad precedent.

The case of *Mendel* v. *Wheeling,* 28 W. Va. 233, establishes the doct: ine that a city, owning its own water works, under a charter, not compelling, but permitting, it to own and operate the negligence of the agents and servants of the city in suffering the water pipes to become useless, so that they will not supply water for the extinguishment of fire. It is further held in that case that it is wholly immaterial, on the question of such liability, whether the city charges those who are supplied with water a certain annual water rent therefor, by way of raising the means to defray the expense of the maintenance and operations of such works, or whether such expense is defrayed by funds provided by direct taxation. In that case, the opinion delivered by JUDGE JOHNSON reviews practically all the cases which rest a distinction upon the ground that the city charges individuals for services rendered them, such as furnishing water or gas, and repudiates that distinction in the following language:

"The idea seems to have been in the minds of these courts, that, unless the cities were to receive a profit for the use of their water works, they would not be liable for the improper construction or improper use of the works. They seemed to so hold in view of the fact, that it had often been decided, that a municipal corporation was not liable for injuries resulting from the negligence of its agents while discharging a purely govern-

mental duty. It seems to me, that as applied to a municipal corporation the idea of profit to be received by the corporation has nothing to do with its liability. It receives no profit in the sense, that a private corporation does, from its operations. In the case of a private corporation the profits received are divided among its stockholders. After the payment of the debts of a private corporation every dollar of its earnings is at the disposal of the corporation to be distributed in dividends to its stockholders or reinvested for their individual benefit; not so with a municipal corporation, not one dollar of its earnings, after its expenses and other debts are paid, can by any possibility accrue to the benefit of any private individual. There is no stock and can therefore be no stockholders in a municipal corporation. If any profits accrue to it, they at once go to the benefit of the public.  *  *  *  If a city owns its water works, it may pay its running expenses and repairs by taxation, if it pleases, and furnish water free to all who will comply with its regulations; or, as is generally the case and is more just and equitable, it may keep up its works and repairs by charging each individual at a fixed rate for the water he uses; and if there is any surplus, it is used in some other way for the benefit of the corporation to lessen the burdens of its citizens. Whatever *profit*, if it may be so called, it receives, the officers of the city charged with municipal duties, among which are the management of its water works, do not receive it or any part thereof, but it goes to the benefit of the public. It is not properly speaking a *profit*, but it is a mode of taxation to meet the burdens of the municipal government. No case has been cited, which shows that the plaintiff's action here can be maintained. On the contrary many cases have been cited, which in principle decide, that a municipal corporation is not responsible for damages for loss by fire, which was caused by the negligence of the servants or agents of the city in charge of the water works and pipes under the city's control."

This effectually disposes of a large number of authorities cited in the brief for the plaintiff in error as sustaining the contention that there is nothing in the nature of the contract that would relieve the water company from liability, it being contended that, as, under these authorities, the city would be liable upon such a contract as was made with the water company,

and to the extent of the damage set up against the defenedant, said defendant would be clearly liable, it being only a private corporation. These authorities are, Tied. Mun. Corp. 644, sec. 327, also pp. 644-688, secs. 327, 336; Sher. & Redf. Neg. sec. 286; *Finlay* v. *Salem,* 137 Mass. 171; *Bailey* v. *Mayor &c.,* 3 Hill (N. Y.) 531; *Savings Fund Association* v. *Philadelphia,* 31 Pa. St 175; *Oliver* v. *Worcester,* 102 Mass. 500. Most of these authorities are wholly inapplicable to the case presented here, for they relate to actions for injuries inflicted upon persons or property in the exercise of the powers conferred, affirmative acts inflicting injury; and not to cases of failures to exercise the powers at all, in consequence of which individuals have suffered losses. Many of the authorities say that, for injuries resulting from the negligent exercise of the power, municipal corporations are liable, upon the theory that, in undertaking to furnish water or gas or other commodities to individuals, and charging therefor, they depart from the purpose for which such corporations are created and engage in business enterprises and become assimilated to private corporations. That is stated merely as a reason for holding them liable for injurious acts done in the exercise of such power. These courts do not go so far as to say that there is a binding contract between the municipal corporation and the individual for the non-performance of which, on the part of the corporation, the individual has a right of action for damages. As has been seen, this Court puts the ground of recovery of damages for injuries resulting from the negligent exercise of the power upon an entirely different ground. In *Saving Fund Association* v. *Philadelphia,* the question was not liability for damages, either for the non-exercise of the power or the negligent exercise thereof, and the court adopted the same line of reasoning in reaching the conclusion that an injunction be awarded against the city, restraining it from taking possession of gas works, to the injury of persons holding loan certificates, called City Gas Loans. So that case has really no application here.

In the opinion in *Mendel* v. *Wheeling,* the following is quoted from the opinion in *Brinkmyer* v. *Evansville,* 29 Ind. 187, delivered by Elliott, Judge: "A municipal corporation is for the purposes of its creation a government possessing to a limited extent sovereign powers, which in their nature are either legisla-

tive or judicial and may be denominated governmental or pub-
lic.  The extent, to which it may be proper to exercise such
powers, as well as the mode of that exercise by the corporation
within the limits prescribed by the law creating them is of ne-
cessity intrusted to the judgment, discretion and will of the
properly constituted authorities, to whom they are delegated.
And being public and sovereign in their nature, the corpora-
tion is not liable to be sued either for a failure to exercise them
or for error committed in their exercise." As much of the
substance of this quotation is incorporated in the syllabi of
*Mendel* v. *Wheeling,* it is but fair to say that this Court has
approved it as sound law.  It lies at the basis of the decision of
that case.  It holds that a municipal corporation is not bound to
furnish protection from fire; and that when authorized so to do
by legislative act, it has discretion to omit the exercise of that
power, and there is no duty resting upon it which may form the
basis of a contract between the corporation and the citizen who
owns property.  This is the position taken by the great majority
of the courts which have passed upon the question.  *Wheeler* v.
*City of Cincinnati,* 19 O. St. 19 ; *Grant* v. *City of Erie,* 69 Pa.
St. 420 ; *Tainter* v. *City of Worcester,* 123 Mass. 311 ; *Foster* v.
*Water Co.,* 3 Lea (Tenn.) 42 ; *Vanhorn* v. *City of DesMoines,*
53 Ia. 447 ; *Wright* v. *Augusta,* 78 Ga. 241.

This principle governs also the relation of a private or *quasi*
public corporation, toward the citizens and property owners of
the city in which, under a contract with the city, it undertakes
to furnish water for protection against fire, in consideration of
the payment by the city of an annual rental.  *Davis* v. *Water
Works Co.,* 54 Ia. 59 ; *Becker* v. *Water Works Co.,* 79 Ia. 419 ;
*Britton* v. *Water Works Co.,* 81 Wis. 48 ; *Howsmon* v. *Water
Co.,* 119 Mo. 304 ; *Fitch* v. *Water Co.,* 139 Ind. 214 ; *Ferris* v.
*Water Co.,* 18 Nev. 44 ; *Fowler* v. *Water Works Co.,* 83 Ga. 219 ;
*Mott* v. *Water & Mfg. Co.,* 48 Kan. 12 ; *Safety Deposit and
Trust Co.* v. *Water Co.,* 94 Fed. Rep. 238.

Thus, in *Becker* v. *Water Works Co.,* 79 Ia. 419, it is held
that "the law, which authorizes cities to contract for the build-
ing and operation of waterworks by individuals or companies,
confers no power to contract with such individual or company
to indemnify a citizen and taxpayer for damages which he may
sustain by reason of a failure to furnish water as provided in

the contract, so as to enable the citizen to maintain an action therefor in his own name." In the *Howsmon* v. *Water Co.* case, the ordinance provided that "should said water company, from lack of supplies, or any other cause, except providential or unavoidable accident, fail to furnish a reasonable or adequate supply of water to extinguish any fire, then it shall be liable for all damages occasioned by such fire or neglect." But the court held that "A water company which agrees with a town to be liable for damages caused by its failure to supply water sufficient to extinguish all fires cannot be sued on such agreement by a citizen though he and others pay a special tax to the company under the contract." In *Davis*-v. *Water Works Co.,* 54 Ia. 59, the court treated the Water Works Company as an agency or instrumentality in the hands of the city, in the exercise of its police power, and gave it the same immunity from action by citizens as are given to the officers of a city, using the following language: "The plaintiff received benefits from the water thus supplied in common with all the people of the city. These benefits she receives just as she does other benefits from the municipal government, as the benefits enjoyed on account of improved streets, peace and order enforced by police regulation, and the like.    It cannot be claimed that the agents or officers of the city employed by the municipal government to supply water, improve the streets, or maintain good order, are liable to a citizen for loss or damage sustained by reason of the failure to perform their duties and obligations in this respect. They are employed by the city, and responsible alone to the city.    The people must trust the municipal government to enforce the discharge of duties and obligations by the officers and agents of that government.    They cannot hold such officers and agents liable upon the contracts between them and the city." This is quoted with approval in *Fitch* v. *Water Co.,* 139 Ind. 214, 219.

An effort has been made here, as in many other cases, to maintain this suit on the ground that the contract made between the city and the water works company contains a promise, or a contract, made for the benefit of the plaintiff. Practically all the courts hold the contrary of this proposition. In *Ferris* v. *Water Co.,* the court says:    "The plaintiff, in common with the other residents of the town, enjoyed the advantages of this

contract. He had an indirect interest in the performance of the contract by the water company, as had all the property holders of the town, but such an interest is not sufficient to constitute the privity, either directly or by substitution, which must exist in order to give him a right of action upon the contract." The following cases also hold that a citizen whose property has been destroyed by fire, in a city where water is furnished by a private corporation under contract with the city, cannot sue on that contract, under the exception which allows a stranger to a contract to sue on it when it contains a promise for his benefit. *Howsmon* v. *Water Co.,* 119 Mo. 304; *Davis* v. *Water Co.,* 54 Ia. 59; *Fowler* v. *Water Co.,* 83 Ga. 219; *Nickerson* v. *Water Co.,* 46 Conn. 24; *Safety Deposit Co.* v. *Water Co.,* 94 Fed. Rep. 238; *Mott* v. *Water Co.,* 48 Kan. 12; *Wainwright* v. *Water Co.,* 78 Hun. 146.

Two cases referred to in the brief for defendant in error assert a doctrine contrary to that enunciated in the cases hereinbefore referred to. They are *Paducah Lumber Co.* v. *Paducah Water Supply Co.,* 89 Ky. 340, and *Correll* v. *Greensboro Water Supply Co.,* 32 S. E. 720. The Kentucky case has been disapproved in *Mott* v. *Water Co.,* 48 Kan. 12; *Fitch* v. *Water Co.,* 139 Ind. 214; *Howsmon* v. *Water Co.,* 119 Mo. 304; *Britton* v. *Water Co.,* 81 Wis. 48; *Safety Deposit Co.* v. *Water Co.,* 94 Fed. R. 238. The North Carolina case, *Gorrell* v. *Water Supply Company,* admits that the Kentucky case is against the weight of authority, but approves and follows it on the ground that, "If then, neither the taxpayer himself nor the city on his behalf can sue the company, the conclusion seems to be that the loss by fire in these cases is regarded by the law as damage for which there is no redress." This language is quoted from a note by Judge Freeman in 29 Am. St. Rep. 863. The opinion then proceeds thus: "This is a complete *reductio ad absurdam,* and we prefer not to concur in cases, however numerous,—there are probably a dozen scattered through half a dozen states,—which lead to such conclusion." The answer to this is that, although the property owner has not a right of action against the water works company for his damages, he is in no worse condition than he would be if the protection of his property were intrusted to the city, exercising its police power itself, and not through a water works company as an agent or instrumentality in its

hands. Why should a citizen recover his damages from a water
works company, when the courts universally hold that he can-
not recover from the city itself? Nor does it follow from this
that the protection from danger by fire is less when it is in-
trusted to a private corporation than when it is retained by the
city, since the city has almost as ample power to compel the
water works company to perform its full duty in the premises
as it has in the case of its own agents in charge of its own
water works. In either case, the property owner must sometimes
suffer loss on account of the negligence of the agent, whether
he acts under a mere appointment or a contract in the form of
an ordinance. It is to be noted also that the Chief Justice and
one of the Judges of the North Carolina court dissented in that
case.

From the foregoing, it is very clear that no recovery can be
had upon the contract between the city and the water works
company. Nor can a different conclusion be reached by apply-
ing the principles governing actions *ex delicto*. In *Fowler* v.
*Water Works Co.*, 83 Ga. 219, the court say: "There being no
ground for recovery, treating the action as one *ex contractu*, is
it better founded treating it as one *ex delicto?* We think not,
The violation of a contract entered into with the public, the
breach being by mere omission or non-feasance, is no tort, direct
or indirect, to the private property of an individual, though he
be a member of the community and a taxpayer to the govern-
ment. Unless made so by statute, a city is not liable for failing
to protect the inhabitants against the destruction of prop-
erty by fire. *Wright* v. *Augusta*, 78 Ga. 241; Am. and Eng.
Ency. of Law, vol. 7 p. 997, *et seq*. We are unable to see how
a contractor with the city to supply water to extinguish fires
commits any tort by failure to comply with his undertaking, un-
less to the contract relation there is superadded a legal com-
mand by statue or express law." To the same effect are *Fitch*
v. *Water Co.*, 139 Ind. 214; *Howsmon* v. *Water* Co., 119 Mo.
304.

But one question remains to be considered and that is,
whether a recovery can be had upon the contract alleged to have
existed directly between the plaintiff's tenants and the water
company. There is no allegation that the premises were sup-
plied with hose and other appliances which would have enabled

the occupants of the building and the firemen to have extinguished the fire from the hydrants on the premises, even had there been water. This alleged right of recovery might be disposed of upon the narrow ground that, even though a good cause of action might be set up on this contract, the allegations falls far short. But there is no sufficient allegation that there was a contract between the owner of the property and the defendant. The allegation reads as follows: "That the said plaintiff by its tenants then in possession of the said Hotel Adelphi, had a contract with the defendant, at the time of and before the destruction of the said Hotel Adelphi by fire, as hereinafter complained of, whereby and by virtue whereof the plaintiff and her said tenants acquired the right to use and the defendant undertook and promised to supply water at the said Hotel Adelphi for the quarter then current, for domestic, sanitary and fire purposes and in consideration of the said contract the plaintiff by its said tenants had paid to the defendant in advance a water rental in great amount, to-wit: the amount of $————." On its face this allegation admits that the contract was with the tenants and that the tenants paid the water rent. It is a mere attempt, on the part of the property owner, to claim the benefit of a contract made with the tenant. There is no allegation in the declaration that the tenants were the agents of the owner of the property, and no such relation exists by force of law. Agency between the landlord and tenant would have to be established as a separate and independent relation, either to impose a liability upon the landlord or to enable him to claim the benefit of a contract made by the tenant. No authority is cited and none has been found, holding the contrary of this proposition. It is too well established to require citation of authority that the tenant cannot bind his landlord by his contract for repairs to the property. If he cannot bind his landlord, it follows that, unless specially authorized, he cannot make a contract in reference to the property for the benefit of the landlord, for, in order to do so, he would be compelled to bind his landlord to pay the consideration for the benefit contracted for. Hence, no recovery can be had upon the allegation of the declaration above quoted. Whether if it had been alleged that such a contract existed between the owner of the property and the defendant, recovery would be had upon it, is reserved for future determina-

tion, if such question shall ever be presented. It is not intended here to intimate any opinion, one way or the other, upon that question.

There is no error in the judgment and it must be affirmed.

*Affirmed.*