Mugge v. The Tampa Water Works Co.—Statement of Case.

ROBERT MUGGE, PLAINTIFF IN ERROR, v. THE TAMPA WATER
WORKS COMPANY, A CORPORATION, DEFENDANT IN ERROR.

Where a water works company enters into a contract with a
    city, by the terms of which it enjoys extensive franchises
    and priviliges, such as the right to use the streets ·with its
    mains and hydrants, and to have special taxes levied on
    the property of the citizens to be paid to it for its supply
    ·of water for public use in the extinguishment of fires,
    besides other rights and franchises, and thereby assumes
    the duty of furnishing water for extinguishing fires, and
    under such contract constructs and operates its plant, and
    enjoys the proceeds of such special taxation, it enters upon
    a public calling and owes a duty to the taxpayers of the
    city to furnish water for the purpose of extinguishing fires,
    and it is liable in an action of tort for damages to a tax-
    payer whose property is destroyed by fire on account of its
    negligence in not furnishing water in accordance with the
    terms of the contract. In such a case the contract furnishes
    the measure of its duty.

This case was decided by Division B.

Writ of error to the Circuit Court for Hillsborough
County.

## STATEMENT.

Robert Mugge sued the Tampa Water Works Com-
pany, a corporation organized and existing under and by
virtue of the laws of Florida, in the Circuit Court of Hills-
borough county, and in his declaration alleges in sub-
stance, that on and before the 23rd of May, 1905, the de-
fendant company owned and operated and has ever since
owned and operated a plant and water works for the
public and private supply of water within the city of

Tampa, under and by virtue of a franchise granted by the city of Tampa to W. A. Jeter and A. E. Boardman, their associates, successors and assigns, and a contract made and entered into between the city of Tampa and Jeter and Boardman, embraced in an ordinance of said city numbered 7, adopted by the City Council, which is made a part of the declaration as Exhibit "A," along with other ordinances marked Exhibits "B," "C" and "D." That the City Council was duly authorized to pass said ordinances and make said contract; that said contract was assigned to the defendant company and accepted by it, and it has ever since first of January, 1889, operated its water works system under it; that under said ordinances and contract the defendant company was granted the franchise and right to lay pipes, erect hydrants, fountains and other structures in and on all the streets and public ways of the city, the exclusive right and privilege to construct and operate its water works for the term of thirty years, the right to receive $4,950.00 per annum from the city as rental for 110 double nozzle hydrants to be placed on the streets not further apart than 400 feet, and $45.00 per annum for all additional hydrants to be installed as the city might grow; the right to have sufficient taxes levied and collected annually on all taxable property in the city to meet the payment of hydrant rentals for public fire service, and also a special tax to be levied and collected for such purposes, and the proceeds kept as a separate fund to be exclusively devoted to the payment of such hydrant rentals; and that this special tax for hydrant rentals has been levied annually, collected and paid to the defendant company. That in consideration of these rights, franchises and rentals the defendant company agreed to erect water works, with a reservoir capable of holding

100,000 gallons of water, sufficient to give a pressure on the mains and from a hydrant located at the intersection of Washington and Franklin streets, and through 100 feet of fire hose and a one inch nozzle, to throw a stream of water vertically to a height or distance of fifty feet, giving a first class fire protection; that it should erect one hundred and ten double nozzle hydrants of the usual pattern with nozzles to fit the fire department hose; that it should maintain a standard pressure of forty pounds to the square inch on the water mains of said water works from its standpipe or reservoir during the life of the contract; that the water works company should assume all liabilities to persons and property arising from constructing or operating the same; that the principal and primary consideration moving the city to grant the franchises and rights aforesaid, as stipulated in the ordinance, was to provide for and secure to the citizens, residents and property owners of the city better protection against fires; that said contract was made and acquiesced in by the defendant company for the benefit of citizens and property owners of the city, including the plaintiff, who was at the time of making the contract, and ever since has been a citizen, property owner and taxpayer in said city; that on the 23rd of May, 1905, the defendant company had in use a water plant, mains, hydrants and reservoir or tank, adequate for a first class fire protection; that prior to that day the city of Tampa had provided and was then maintaining at great expense a first class fire department, and thoroughly equipped fire stations in the four wards of the city; that on said 23rd of May, 1905, the plaintiff was the owner of a two story brick building, sixty feet wide by one hundred feet in length, located at the northwest corner of the intersection of Franklin and

Caro streets in said city; that said building was occupied by a tenant and caught on fire and was burned on that day; that when the building caught on fire the tenant immediately turned in fire alarm, and in less than ten minutes and before the fire had gained any headway or done any appreciable damage three fire companies, from as many stations well equipped and ready for action, were on the scene; that the nozzles and hose were in every respect adequate and sufficient, and were attached to hydrants in easy reach of plaintiff's building, and near enough to have afforded water adequate for the ready extinguishing of the fire, if there had been sufficient water in the water mains and forty pounds pressure to the square inch on said mains, or had there been pressure sufficient to throw a stream of water fifty feet high as provided in the contract. In addition, one of the fire companies had at the fire within ten minutes after it broke out a powerful fire engine capable of throwing from eight hundred to nine hundred gallons of water a minute, and of giving a pressure of over three hundred pounds to the square inch, and of generating a head of one hundred pounds of steam in five or six minutes, and with a capacity for coupling three sets of four inch hose, and of forcing simultaneously a stream from each entirely over or into any portion of said building, which engine was immediately under sufficient steam and coupled to one of the hydrants close to said building, and in short, that every sufficient arrangement was made to extinguish the fire before damage resulted, but that notwithstanding the promptness of the fire department, and the sufficiency of its appliances, the water mains on account of the negligence of the defendant company were found without appreciable pressure and failed to yield any appreciable flow of water, and thus solely by reason

of the persistent, careless, wilful and wanton negligence on the part of the defendant company in not supplying the water mains and hydrants with water and water pressure as required by the contract, the plaintiff's building was destroyed by fire; that plaintiff, relying on the defendant to comply with its contract, and on the efficiency of the fire department, had no fire insurance on his building. Plaintiff claims $25,000.00. The foregoing contains the substance of the declaration, and exhibits, which occupy thirty-one pages of the record.

It appears from the first ordinance, which contains the contract, that the city guaranteed the interest on $80,-000.00 of the water company's bonds for thirty years at 6 per cent. the city agreeing to pay the same and apply the amount to the rental of the hydrants. The amount of the bonds on which interest was to be paid was subsequently increased to $102,000.00 and the number of hydrants was increased to meet the necessities of a rapidly growing city.

The declaration was demurred to on the following grounds:

1st. Said declaration fails to state a cause of action.

2nd. It shows there has been no breach of the contract between the city and the defendant.

3rd. It shows no privity of contract between the defendant and plaintiff so as to give plaintiff a right to sue for a breach of the contract between the defendant and the city of Tampa.

4th. The alleged breach of contract was not the proximate cause of the plaintiff's loss.

5th. The city, in making the contract with the defendant to supply water for extinguishing fires, was simply per-

forming its public and governmental duty and a breach of the contract on the part of the defendant does not authorize suit by a taxpayer.

On a hearing the demurrer was sustained and a judgment rendered dismissing the suit. The case is here on writ of error from this judgment.

*Lunsford & Dickenson,* for Plaintiff in Error.

*Sparkman & Carter* and *P. O. Knight,* for Defendant in Error.

HOCKER, J. (*after stating the facts*): In view of the great importance of this case and of the conflicting views of the courts upon the question involved the facts set up in the declaration have been stated at some length, in order that they may be compared and contrasted with those given in the cases cited in the briefs, and to which we shall allude.

In the case of Nickerson v. Bridgeport Hydraulic Company, 46 Conn. 24 (the first American case bearing on the question), it was held: "Where a water company organized for the purpose of supplying the inhabitants of a city with water, contracted with the city to supply the city hydrants with water, and by their neglect to do so the fire department of the city was not able to extinguish a fire occurring in the city, it was held that the water company was not liable in damages to the owner of the property burned, for the neglect to supply the water." An examination of the opinion shows that the court regarded the declaration as exceedingly defective, and as showing no such state of facts as appear in the case at bar.

The next American case is that of Davis v. Clinton

Water Works Co., 54 Iowa 59, 6 N. W. Rep. 126. The water works company in that case contracted with the city of Clinton to supply water to be used by the city for the purpose of extinguishing fires. In speaking of the contract the court says: "It is sufficient to state that the parties thereto were the city and the defendant, and the plaintiff in this case in no sense was a party to the contract." In holding that there was no privity of contract between the parties the court further says: "It cannot be claimed that the agents or officers of the city employed by the municipal government to supply water, improve the streets or maintain good order are liable to a citizen for loss or damage sustained by reason of the failure to perform their duties and obligations in this respect." The court thus treats the water company as an agent or officer employed by the city, and not as a business enterprise organized and operated for the profit and advantage of the water company.

The following cases, and perhaps one or two others, follow in time and are in line with these two, viz.: Wainwright v. Queens County Water Co., 78 Hun. 146; Nichol v. Huntington Water Co., 53 West Va. 348, 44 S. E. Rep. 290: Foster v. Lookout Water Co., 3 Lea (Tenn.) 42; Fowler v. Athens City Water Works Co., 83 Ga. 219; 9 S. E. Rep. 673; Wilkinson v. Light, Heat & Water Co., 78 Miss. 389, 28 South. Rep. 877; House v. Houston Water Works Co., 88 Texas 233, 31 S. W. Rep. 179; Ferris v. Carson Water Co., 16 Nev. 44; Bush v. Artesian Hot and Cold Water Co., 4 Idaho 618, 43 Pac. Rep. 69; Ukiah City v. Ukiah Water & Imp. Co., 142 Cal. 173, 75 Pac. Rep. 773, S. C. 64 L. R. A. 231; Fitch v. Seymour Water Co., 139 Ind. 214, 37 N. E. Rep. 982; Britton v. Green Bay & Ft. H. Water Works Co., 81 Wis. 48, 51 N. W Rep. 84;

Howsmon v. Trenton Water Co., 119 Mo. 304, 24 S. W. Rep. 784; Mott v. Cherryvale Water & Manuf'g Co., 48 Kan. 12, 28 Pac. Rep. 989; Eaton v. Fairbury Water Works Co., 37 Neb. 546, 56 N. W. Rep. 201; Becker v. Keokuk Water Works, 79 Iowa 419, 44 N. W. Rep. 694. The terms and conditions of the various contracts are not always alike, but the doctrine of a want of privity of contract between a property owner and the water company runs through them all. The notion that a water company exercising franchises and enjoying important privileges owes a public duty to the property owner to live up to its contract is generally ignored or denied. For instance, in the case of Mott v. Cherryvale Water & Manuf'g Co., *supra,* the court held that where a city contracts with a water company to furnish a supply of water for use in extinguishing fires, such supply to be paid for by a levy of taxes upon the taxpayers of the city, and by the terms of the city ordinance which the water company accepts, the water company agrees that it will pay all damages that may accrue to any citizen of the city by reason of a failure on the part of the company to supply a sufficient amount of water, or a failure to supply the same at the proper time, or by reason of any negligence of the water company, there is no such privity of contract between a citizen or resident and the water company as will authorize him to maintain an action against it for the injury or destruction of his property by fire caused by the failure of the water company to fulfill its contract. In some of these cases the doctrine is advanced that the power to supply water is a governmental one and that as a city is not liable for negligence in exercising the power, therefore a person or corporation who contracts with the city to supply water is not liable for negligence either to the

city or an individual. Ukiah City v. Ukiah Water & Imp. Co., *supra;* Wainwright v. Queens County Water Co., *supra.*

In the case of Britton v. Green Bay & Ft. H. Water Works Co., *supra,* the contract required the company to supply said city and the inhabitants thereof with water for public and private uses, for public and private consumption and for putting out fires. It was held that there was no contract between the water company and private individuals; that the water company was bound by its contract to the city alone; that the company was not required by law to furnish water to put out fires, and assumed no such duty to the public by its contract; that it contracted to do so, *not because it wsa its duty to the public,* but because it *deemed it profitable to itself,* and was willing to be thus bound by its voluntary contract. But the doctrine of these cases has not met with universal acceptance. It has been repudiated in Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340, 12 S. W. Rep. 554; 13 S. W. Rep. 249; Duncan v. Owensboro Water Co., 12 Ky. L. Rep. 824, 15 S. W. Rep. 523; Graves County Water Co. v. Ligon, 112 Ky. 775, 66 S. W. Rep. 725; Gorrell v. Greensboro Water Supply Co., 124 N. C. 328, 32 S. E. Rep. 720, 46 L. R. A. 513, S. C. 70 Am. St. Rep. 598. In this last case the contract between the city and the water company was very similar to the one at bar so far as the duties of the latter are concerned. Judge CLARK rendered the opinion in the case. Among other things it is said: "It is true the plaintiff is neither a party nor privy to the contract, but it is impossible to read the same without seeing that, in warp and woof, in thread and filling, the object is the comfort, ease and security from fire of the people, the citizens of Greensboro. This

.is alleged by the eleventh paragraph of the complaint, and is admitted by the demurrer. The benefit to the nominal contracting party, the city of Greensboro, as a corporation, is small in comparison, and taken alone, would never have justified the grants, concessions, privileges, benefits and payments made to the Water Company. Upon the fact of the contract, the principal beneficiaries of the contract in contemplation of both parties thereto were the Water Company on the one hand and the individual citizens of Greensboro on the other. The citizens were to pay the taxes to fulfill the money consideration named, and furnishing the individual citizens with adequate supply of water and the protection of their property from fire was the largest duty assumed by the company. One not a party or privy to a contract, but who is a beneficiary thereof, is entitled to maintain an action for its breach (quoting authorities). And even when the beneficiary is only one of a class of persons, if the class is sufficiently designated (quoting authorities).     *     *     *
Especially is this so when the beneficiaries are the citizens of a municipality whose votes authorized the contract and whose taxes discharged the financial burdens the contract entails. The officials who executed the contract are technically the agents of the corporation, but the corporation itself is the agent of the people, who are thus effectively the principals of the contract. The acceptance of the contract by the water company carries with it the duty of supplying all persons along its mains (quoting authorities)." Judge CLARK refers to the case of Paducah Lumber Co. v. Paducah Water Supply Co., as holding "that where a party undertakes to furnish water in such mode and quantity that it may be used to extinguish fires in the city in which it is to be supplied, damages sustained

by the destruction of buildings by the failure to so furnish such water is a natural and proximate consequence of such breach of the undertaking," and says this opinion is based upon sound reason. He quotes authorities to show that if the city buildings were destroyed by fire through the failure of the water company to furnish water as provided by the contract, the city could recover. Referring to the three Kentucky cases, he says: "The decisions, however, in other States where the question has been presented are the other way. But this is case of the first impression in this State, and decisions in other States have only persuasive authority. They have only the consideration to which the reasoning therein is entitled. They are to be weighed, not counted. We should adopt that line which is most consonant with justice, and 'the reason of the thing.'" He refers to Judge FREEMAN's note to Britton v. Green Bay and Fort Howard Water Works Company, 29 Am. St. Rep. 863, in which he says: "As none of the courts (the majority) have fairly faced what seems to be the logical result of these decisions, *viz*: that the injured person is thus left without any remedy at all, it must be admitted that the subject is left in an extremely unsatisfactory position," resulting in a *reductio ad absurdum* "resting on the narrow technical basis that a citizen, because not a party to the contract, cannot sue, whereas authorities are numerous that a beneficiary of a contract, though not a party or a privy, may maintain an action for its breach," quoting 7 Am. & Eng. Ency. Law (2nd ed.) pp. 105-108. The latter part of this opinion refutes the contention that such a construction of the contract makes the water company an insurer. Such a construction simply requires the water company to do that which it has agreed to do, no more and no less. The contract is the measure

of its duty, and the water company was held to be liable in damages to a citizen whose property was destroyed by fire owing to the failure of the water company to supply water for extinguishing fires as it had agreed to do.

In the case of Fisher v. Greensboro Water Supply Co., 128 N. C. 375, 38 S. E. Rep. 912, it was decided that the water company was liable in an action of tort where it failed to supply water, and damage by fire resulted from such failure to the property of a citizen. These views of the Supreme Court of North Carolina were tested in the United States Circuit Court for the Western District of North Carolina in the case of Guardian Trust & Deposite Co. v. Greensboro Water Supply Co., 115 Fed. Rep. 184. The question arose in this way: The Guardian Trust & Deposite Company filed a bill to foreclose two mortgages against the Greensboro Water Supply Company. Judgment creditors of the Greensboro Water Supply Company intervened and insisted that their judgments under a statute of North Carolina had priority over the mortgages though rendered after the mortgages were given. The statute in express terms provided that mortgages on the property or earnings of incorporated companies should not have not power to exempt such property from execution for the satisfaction of any judgment obtained in the State courts for labor, "torts committed by such incorporation, its agents or employes whereby any person is killed, or any person or property injured, any clause or clauses in such mortgage to the contrary notwithstanding." The judgments of the intervenors were obtained for the failure of the Water Supply Company to furnish water to extinguish the fire by which the property of the intervenors was destroyed, and recited that the damages were given

for the tortious injury and damage done by the negligence of the defendant.

In the case of Fisher v. Greensboro Water Supply Co. *supra,* the Supreme Court held that the plaintiff was, under the facts of the case, entitled to declare in tort. The question in the United States Circuit Court was whether the Supreme Court of North Carolina had decided correctly in holding that the judgments of the intervenors were for torts. The federal court says "the question is not whether the judgment be valid, but whether it is a judgment of such a character as to be given priority to the claim of the mortgagees, who were not parties to the suit in which it was obtained," and says that the Supreme Court of North Carolina had declined to pass upon this question of priority under the statute in Fisher v. Greensboro Water Supply Co., *supra.* After stating that the statute gave priority to judgments for torts committed by such incorporation, etc., it proceeds: "In the case at bar property was injured because of the alleged negligence of the Greensboro Water Supply Company. Would an action for tort lie? The Greensboro Water Supply Company had assumed the obligation of supplying the city and its inhabitants with water for domestic and public purposes, and also for the purpose of extinguishing fires. The Supreme Court of North Carolina had held in the case of Gorrell v. Greensboro Water Supply Co., 124 N. C. 328, that an action would lie against the corporation as well on the part of the City Council as on that of any citizen of the city. The judgments before us establish the fact that such a supply of water for the purpose of fire was not furnished. They also establish the fact that the failure to do so was because of the negligence of the defendants. Is such negligence the foundation for an action in tort?"

It then states that notwithstanding the Code procedure, the distinction between causes of action *ex contractu* and *ex delicto* still remains. It then proceeds: "The Greensboro Water Supply Co., as has been seen, was under the obligation of a contract to furnish a full supply of water to the city and its inhabitants for sundry purposes, including that of fire. And under this obligation it was its duty to do whenever needed. Besides this,—indeed, to facilitate the performance of this obligation and in consideration of this obligation,—it was clothed with valuable franchises, under which it used the streets of the city in laying its mains. Under its obligations, it was to furnish the city and its citizens with one of the necessaries of life, and was bound to furnish all that desired it, who paid the price imposed. It served the public, and to this extent was a quasi public corporation, bound to the discharge of a public duty" (quoting authorities). "So it was the duty of the water company to furnish the water for fire, a duty arising out of an express contract and out of the franchises granted to it for the purposes of public utility and need. It did not fulfill this duty." The court then quotes Chitty and other authorities to the effect that "while normally a breach of contract gives rise to a cause of action *ex contractu*, a contract may impose a duty on the part of the defendant as party to it, for the violation of which the plaintiff may recover *ex contractu* or *ex delicto*, at his option." The court then concludes that the judgments of the intervenors were for torts, and that they had priority over the mortgages. This case was then taken to the United States Supreme Court on certiorari and the decree of the Circuit Court was affirmed. Guardian Trust Co. v. Fisher, 200 U. S. 57. Justice BREWER delivered the majority opinion of the court and in the course of it

discusses the relation of the Water Supply Company to the citizen. He uses this language: "And here we are met with the contention that, independently of contract, there is no duty on the part of the water company to furnish an adequate supply of water; that the city owes no such duty to the citizen, and that contracting with a company to supply water imposes upon the company no higher duty than the city itself owed, and confers upon the citizen no greater right against the company than it had against the city; that the matter is solely one of contract between the city and the company, for any breach of which the only right of action is one *ex contractu* on the part of the city. It is true that a company contracting with a city to construct waterworks and supply water may fail to commence performance. Its contractual obligations are then with the city only, which may recover damages, but merely for breach of contract. There would be no tort, no negligence, in the total failure on the part of the company. It may also be true that no citizen is a party to such a contract, and has no contractual or other right to recover for the failure of the company to act; but, if the company proceeds under its contract, constructs and operates its plant, it enters upon a public calling. It occupies the streets of the city, acquires rights and privileges peculiar to itself. It invites the citizens, and if they avail themselves of its conveniences, and omit making other and personal arrangements for a supply of water, then the company owes a duty to them in the discharge of its public calling, and a neglect by it in the discharge of the obligations imposed by its charter, or by contract with the city, may be regarded as a breach of absolute duty, and recovery may be had for such neglect. The action, how-

25—S. C.

ever, is not one for breach of contract, but for negligence in the discharge of such duty to the public, and is an action for tort. * * * Even if the water company was under no contract obligations to construct water-works in the city or to supply the citizens with water, yet, having undertaken to do so, it comes under an implied obligation to use reasonable care; and if, through its negligence, injury results to an individual, it becomes liable to him for the damages resulting therefrom, and the action to recover is for a tort, and not for breach of contract."

It is contended by the defendant in error that the only question before the U. S. Courts in these cases was whether the judgments rendered in the North Carolina courts were in tort or on contract, and that the question of the right of the plaintiff to sue at all was not passed on. But it seems to us that both of these courts passed on the question of the right of the plaintiffs to sue *in tort*, and that they upheld that right. For if the plaintiffs did not have the right to sue in tort, then it follows that their judgments could not have been given priority over the mortgages. It was for the purpose of discovering the nature of the judgments, as being *ex contractu* or *ex delicto*, that these courts entered into an examination of the facts upon which the judgments were predicated, and that examination led to the conclusion that they were properly judgments in tort. Certainly there is nothing in the opinions of these courts that suggests a doubt of the correctness of the reasoning of the Supreme Court of North Carolina, but on the contrary that reasoning is supported and strengthened.

Upon the question of the liability in damages of a corporation which had undertaken a public duty to be per-

formed for the benefit of the inhabitants of St. Louis, for a negligent performance of that duty, the case of Lampert v. Laclede Gas Light Company, 14 Mo. App. 376, furnishes an instructive examination of some of the conflicting English and American authorities. The opinion is delivered by the eminent Judge SEYMOUR D. THOMPSON, and the conclusion is expressed in the first headnote, as follows: "A contract with a municipality for the repairing of street lamp posts and lighting the lamps raises a public duty on the part of the contractor to be performed for the benefit of the citizens of the municipality distributively." There is also an interesting discussion of the conflicting cases in 1 Farnham on Waters and Water Courses, Sec. 160b. The author in reviewing the cases of Gorrell v. Greensboro Water Supply Company and Duncan v. Greensboro Water Company, in which it was "held that a contract between a municipal corporation and a water company by which the latter agreed to furnish water direct from the pumps for the use of the fire department whenever an alarm was given, is an agreement for the benefit of the property owners of the city as well as for the municipality; and as the consideration for the contract was paid by the property owner in the way of taxes, he has a right of action against such water company for an injury sustained by him by reason of the neglect of the company to furnish sufficient water for the extinguishment of a fire by which his property was destroyed," says: "These decisions strike at the root of the matter and disclose the contract in its true light. There is no doubt that the taxpayer is the instigator of the contract; that he furnishes the consideration for it, and that he is the one for whom it is made, and that the municipality is merely his agent in executing it. Under such circumstances there

is no reason why he should not maintain an action for injuries inflicted on him by the breach. Some courts have attempted to meet and answer this contention. * * * These decisions do not satisfactorily meet the issue raised. The mere assertion that there is no privity of contract does not do away with the facts of the case. * * * The non-liability of the water company depends, not on the liability of the taxpayer to maintain the action, but on the failure of the water company's contract to cover the liability sued for." What we understand from this discussion is that the contract of the water company is the measure of its duty to the property owner, and therefore of its liability. It is impossible to reconcile the conflicting views of the courts and law-writers upon the question at bar. It seems to us that the views expressed by Justice BREWER of the United States Supreme Court, and Justice CLARK of North Carolina presented in the cases mentioned, when applied to facts such as are disclosed in the record before us, are the most logical and reasonable, and most nearly satisfy the sense of justice and right. We are of opinion that the defendant in error, enjoying as it does, extensive franchises and privileges under its contract, such as the exclusive right to furnish water to the city and its inhabitants for thirty years, the right to have special taxes levied on the property of the citizen for its benefit, the right to use the streets with its mains and hydrants, the right to charge tolls and regulate the use of water, not to mention others, has assumeed the the public duty of furnishing water for extinguishing fires, according to the terms of its contract, and that for negligence in the discharge of this duty, whereby the fire department adequately equipped and prepared was not furnished with water according to the contract, and the

property of the property owner was, on account of such negligence in furnishing water, destroyed, it is liable to him for the damages suffered, in an action of tort. We are further of opinion that the declaration sufficiently alleges the tort, that it was not amenable to the demurrer, and that the Circuit Judge erred in sustaining the same.

The judgment is reversed at the cost of the defendant in error, and the cause remanded for further proceedings.

TAYLOR, and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.