Case 6.—ACTION BY THE SPRINGFIELD FIRE & MARINE
INS. CO., &c. AGAINST THE GRAVES COUNTY WATER
& LIGHT CO. FOR DAMAGES FOR FAILURE TO FURNISH
WATER UNDER ITS CONTRACT TO EXTINGUISH FIRE.—
March 1.

## Springfield Fire and Marine Insurance Company, &c. v. Graves County Water and Light Company.

Appeal from Graves Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for defendant. Plaintiff's appeal. Affirmed.

Water Company—Contract to Supply City—Unavoidable Accident
—Loss by Fire—Liability—Contracts—Rule for Construction.

1. Water Company—Contract to Supply City—Unavoidable Acci-

Springfield F. and M. Ins. Co., &c. v. Graves County W. and L. Co.

dent—Loss by Fire—The appellee, Graves county Water and Light Co., contracted with the city of Mayfield to furnish an ample supply of water for all purposes. It being known by all parties that the water had to be obtained from deep bored wells. Appellee sunk three wells, two of which were ample to supply the city at ordinary times. A few days prior to the loss sued for, without the fault of appellee, the "plunger" at the bottom of one of the wells got fastened and would not work, and after diligent efforts to remedy it, finally had to be abondoned and a new well bored. During the time of this accident (the water supply having diminished by reason of a long drought) a fire occurred, destroying property for the loss of which this action was brought against appellee. Held —That under the contract an instruction to the jury, that "if they believe from the evidence that the failure of the defendant to furnish an ample supply of water at the time of the burning of the property was due to accidental causes, not the result of defendant's negligence, and which it could not, by the use of ordinary diligence, have forseen and prevented, the law is for the defendant and the jury should so find," was proper.

2. Contracts—Rule for Construction—The general rule for construing a contract is to take it as a whole, and, if possible, ascertain the true meaning and intent of the parties, and where there is any ambiguity in a contract or any doubt concerning its meaning, it should always be resolved against the party preparing it, if it can be done without doing violence to the parties thereto.

W. M. SMITH, W. J. WEBB and SAMUEL H. CROSSLAND for appellants.

POINTS AND AUTHORITIES CITED.

1. Rights of citizens to sue on contract made by the water company with the city. (Graves County Water & Light Co. v. Ligon, Allen & Co., 23 Ky. Law Rep., 2149; Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340; Patch v. City of Covington, 17 B. Monroe, 722; Duncan v. Owensboro Waterworks, 12 Ky. Law Rep., 335; Duncan's Ex'rs v. Owensboro Waterworks, 12 Ky. Law Rep., 824; Owensboro Waterworks v. Duncan's Administrator, 17 Ky. Law Rep., 755; Ostrander on Fire Insurance, 2 Ed., pp. 331-348; Lampert v. Gas Light Co., 4 Mo. App., 376; Robt. Hayes v. Michigan Central R. R. Co., 111 U. S., 228 (410); R R. v. Terhune, 50 Ill., 151; Schmidt v. Milwaukee & S. P. R. R. Co., 23 Wis., 188; Seimers v. Eisen 54 Col., 418; Galena & C. U. R. R Co. v. Loomis, 13 Ill., 548; O. & M. R. R. Co. v. McClellan, 25 Ill., 120; St. L., V. & T. H. R. R. Co., v. Dunn, 78 Ill., 197; Massoth v. D. & H. Co., 64 N. Y., 524; B. & O. R. R. Co. v. State, 29 Md., 252;

Springfield F. and M. Ins. Co., &c. v. Graves County W. and L. Co.

Pollock v. Eastern R. R. Co., 124 Mass., 158; Cooley on Torts, 657; Taylor v. Lake Shore E. R. Co., 40 American Reports, 457; New Orleans, N. E. R. v. Meridian Waterworks Co., 72 Fed. Rep., 227; Davis, Moody & Co. v. Urley, 3 Ky. Law Rep., 317; Smith v. Lewis, 3 B. Mon., 229; Lucas v. Chamberlin, 8 B. Monroe, 276; Allen v. Thomas, 3 Met., 198; Story on Bailments, sec. 103; 1 Chitty on Pleadings, p. 4; Joyce on Electric Law, sec. 234; City of Freeport v. Isabella, 83 Ill., 440; 25 American Reports, 470; Thompson's Commentaries on the Law of Creditors, vol. 5, sec. 6357; Robertson v. Chamberlin, 90 American Decisions, 713.)

2. The right of insurer to subrogation.  (Joyce on Insurance, vol. 4, sec. 3572; Chicago & St. L. & N. O. R. R. Co. v. Pullman, &c., 139 U. S., 79; Newcomb v. Cincinnati Ins. Co., 10 American Reports, 746; Richards on Insurance, sec. 25, pp. 31, 32, 33; Connecticut Fire Ins. Co. v. Erie Railway Co., 29 American Reports, 171; Mobile Ins. Co. v. Columbia R. R. Co., 44 American State Reports, 725; Wager v. Insurance Co., 150 U. S., 97; Providence & Washington Ins. Co. v. Sydney, et al, 27 Federal Reporter, 119.)

3. Party bound to comply with terms of contract regardless of accident, &c.  (Harrimen v. Emrick, 76 U. S. 629, 9 Wallace, 161-175; Bohannans v. Lewis, 3 T. B. Monroe, 376; Singleton v. Carroll and others, 6 J. J. Mar. 527; Helburn & Co. v. Mofford, 7 Bush, 170.)

4. Where no time is fixed for performance and no demand made, can not be pleaded as a defense.  (Worley v. Mourning, 1 Bibb, 254; Adkins v. Ferrell's Ex., 19 Ky. Law Rep., 1082.)

5. Where the contract is in writing, court must construe.  (Excelsior Coal Mining Co. v. Va. Iron & Coal Co., 23 Ky. Law Rep., 1834.)

ROBBINS & THOMAS for appellee.

## POINTS AND AUTHORITIES CITED.

1. Howsoever much there may have been a deficiency of water, unless an able, competent and well equipped fire company arrived upon the scene in time to have extinguished the fire the appellant can not recover.  (Owensboro Water Co. v. Duncan, 17 Ky. Law Rep., 755.)

2. In construing contracts, all parts thereof must be looked at, and the intention of the parties arrived at from the entire contract, the court putting itself in the situation of the parties at the time the contract was executed.  (Bishop on Contracts, secs. 380, 382 and 404; Beach on Contracts, secs. 702, 708, 711, 712 and 719; McGrath v. Grinstead, 9 Ky. Law Rep., 373.)

Springfield F. and M. Ins. Co., &c. v. Graves County W. and L. Co.

ADDITIONAL POINTS AND AUTHORITIES FOR APPELLEE.

1. The plaintiff in this case can not be subrogated to the rights of Ligon, Allen & Co., and the demurrer to the petition should have been sustained. (Federal Cases, case No. 96; 59 Federal Reporter, 984; 93 Michigan, 139; 26 La. Ann., 447; 66 Federal Reporter, 446; 42 Missouri Appeals, 118.)

2. Under the contract in this case the absence of negligence on the part of the waterworks company is a defense, and instructions B and C, submitting that question, were proper. (5 Littell, 66; 4 J. J. Mar., 217; 5 B. Monroe, 497; Century Digest, vol. 11, title "Contracts," sec. 730, sub-secs. b, d, h, 1, r and ss; sec. 735, sub-secs. a, b, c, d, f, k and 1; sec. 736; sec. 737, sub-sec. a; Black on Interpretation of Laws, pp. 132, 166 and 169; Bishop on Contracts, secs. 380, 382 and 404; Beach on Contracts, secs. 702, 708, 711, 712 and 719; 9 Ky. Law Rep., 373; 17 Ky. Law Rep., 755.)

OPINION BY JUDGE NUNN.—Affirming.

On the night of June 26, 1901, a fire occurred in the city of Maysfield, Ky., destroying a large amount of property, of the value of about $200,000. About $43,-000 worth of this belonged to a firm of tobacco dealers known as Ligon, Allen & Co., who instituted suit against the appellee herein for damages on account of its failure to furnish water, under its contract, with which to extinguish the fire. The appellee in this case demurred to that petition, which demurrer was overruled. It filed an answer, but subsequently withdrew it, and stood by its demurrer. The court in that case instructed the jury to find for Ligon, Allen & Co. the amount sued for, less the insurance on the property and salvage. The verdict of the jury was for $12,000, and from that judgment the water company appealed to this court, and endeavored to have this court overrule its decision in the case of Paducah Lumber Co. v. Paducah Water Supply Co., reported in 89 Ky., 340, 11 Ky. Law Rep., 738, 12 S. W., 554, 13 S. W., 249, 7 L. R. A., 77, 25 Am. St. Rep., 536, and other opinions following it. This court declined to overrule these cases, but approved them, and affirmed

the judgment of the lower court.   (See the opinion
in Graves County Water & Light Co.  v. Ligon, 66 S.
W., 725, 23 Ky. Law Rep., 2149.)

The appellant, Springfield Fire & Marine Insurance
Company, having previous to the fire insured the prop-
erty of Ligon, Allen & Co. for the sum of $5,000,
paid the insurance after the loss, and took from the
assured an assignment of all their rights, interests
and claims they had, for the loss of this property,
against all persons, and especially against the appel-
lee, Graves County Water & Light Company.   The
appellant insurance company together with Ligon,
Allen & Co., who joined for the use and benefit of ap-
pellant company, instituted this action against the ap-
pellee to recover the $5,000, with interest from the
date of payment; alleging, in substance, that the loss
of this property resulted from the failure of appellee
to comply with its contract that it had made with the
city of Mayfield, and the citizens thereof, to furnish at
all time sufficient water to extinguish fires.   There
appears not to have been any contract other than the
ordinance passed by the city, which was accepted by
the water company, and constituted the contract.
The ordinance was filed with the petition, and consists
of 14 sections.  By the first section it is shown that
the contract was for the supplying of water and elec-
tric lights to the city and its inhabitants both for pub-
lic and private uses.  By the second it is provided
that the supply shall be from the most available source
where good water can be obtained.  This is to be de-
termined by the company.  It was also provided
therein that the company should keep a sufficiency of
engine and boiler power, so, if one engine or pump
should get out of fix, that there should be another
which could be used for pumping water.  By the third
it was provided that all mains and pipes used in con-

struction by the company should be of suitable size to furnish an abundant supply of water for present and future requirements for the city, and should be laid in trenches, with not less than 30 inches' cover. It is further provided by that section that the company should give a public test of the power and capacity ·of the waterworks, of which the council should have notice, and at the test they should throw from separate hydrants, in the business part of the city, not less than three simultaneous streams of water, through 50 feet of hose and a one-inch ring nozzle, to the height of 80 feet, or a horizontal distance corresponding therewith.  By the fourth it is provided that the compnay shall not unnecessarily obstruct the streets, sidewalks, etc., in constructing or repairing its plant.  By the fifth the extension of the plant is provided for whenever it becomes necessary. By the sixth it is provided how the water company should be paid for the water furnished during the faithful operation of the plant.  By the seventh it was provided that the water from the fire hydrants should be used only in the extinguishment of fires, and should furnish effective streams without the aid of portable engines.  The eighth section was as follows: "The said Graves County Water and Light Company shall keep all fire hydrants rented of it, supplied with water and shall maintain them in effective working order, except during the time of repairing, or removing any hydrant which has become ineffective by accident or other cause than willful negligence on the part of said Company, and the hydrants shall be in charge of such person as the city council shall appoint to that place."  By the ninth the water company agreed to furnish free certain drinking fountains and water for city purposes.  By the tenth there was provided the minimum dimensions of the standpipe

and mains, and also that an arrangement should be made whereby the water could be pumped into the mains direct as well as into the standpipe. By the eleventh there was provided for communication between the pumphouse and the city. By the twelfth it was provided that the city should protect the company in its property, and from waste of water by the consumers. By the thirteenth it was provided as to how the city might purchase the plant at the expiration of the contract. By the fourteenth it was provided when the plant should be completed. It was agreed that the city should organize, equip and maintain a competent fire company, with all necessary appliances for extinguishing fires. It was alleged in the petition that the city complied with all the requirements on its part, and that the loss of this property was occasioned by the failure of the appellee to comply with its contract in failing to furnish the water as it obligated itself to do.

The appellee answered this petition, denying all the material allegations, and alleged that at the time of the organization of the appellee water company, and the entering into the contract stated, it was known by all the parties that the water supply could be obtained only by means of deep-bored wells, there being no other available source to obtain it, that it sunk three wells for this purpose, two of them 18 inches in diameter, and the other, 12; that two of them were, under ordinary circumstances, sufficient to supply all the water ordinarily used by the city and private persons; that at the time of the fire, they would have had an ample supply of water, but for the fact that a few days prior to the fire the "plunger" at the bottom of one of the 18-inch wells became fastened, and would not work, and rendered this well useless; that this accident was unavoidable, and could not have been

anticipated, and that it did not occur by reason of any negligence of any character, or by reason of any want of care or caution on the part of appellee; that immediately after the accident they began working to repair and make this well effective, and continued this work from the accident, day and night, and were working on it at the time of the fire, and eventually had to abandon it and sink another well; that, notwithstanding the loss of the use of this well, the remaining wells would have furnished sufficient water for all purposes, had it not been for the existence of an unusal drought and excessive heat, which had existed for several weeks prior to the fire, and had not the citizens of the city used the water extravagantly and wasted it, which was permitted by the city, contrary to its contract with the appellee; that, but for the unavoidable accident stated, it would have had its hydrants supplied with water and maintained them in effective working order.   The affirmative matter of the answer was controverted.

The facts admitted and proven on the trial are, in substance, as follows: This fire occurred in the tobacco warehouse district of the city near the hour of midnight, and destroyed the buildings on about 10 or 12 acres of ground.   The weather was very dry and hot, with the wind blowing a gale sufficiently strong to carry parts of shingles several miles into the country.   The proof is somewhat conflicting as to the progress of the fire at the time of its discovery, and the arrival of the wagon with the hose at the scene.   Appellant's proof was to the effect that there was only one building on fire at that time, and that was about a half a block away from the building of Ligon, Allen & Co.   Appellee's proof was to the effect that there were two buildings mostly destroyed, and the third was igniting, at the time of the arrival of the hose

wagon at the place, and that there was but one building between the building of Ligon, Allen & Co. and the third one which had taken fire; that the wind was blowing in the direction of Ligon, Allen & Co.'s building from the fire. The proof is also somewhat conflicting as to the efficiency and equipment of the fire company. Appellee's proof conduces to show that none of the fire company, except the driver of the hose wagon, were present until some 20 or 30 minutes after the wagon arrived at the fire; that the captain of the company was not there at all, and that whatever company there was, was made up of inexperienced volunteers; that there was only one hose there when they began to fight the fire. Appellant's proof shows that at the beginning there was one other fireman besides the driver, and that the volunteers were efficient. It was admitted that at the time there was an insufficient supply of water, and that the hydrants were not in an effective working condition to successfully fight the fire at the beginning, and for some little time thereafter. There was much proof to the effect that, even if they had had a full supply of water, they would have been unable to have successfully fought the fire, owing to the stage of it when discovered, and the prevailing conditions of the wind and weather. There was much testimony to the contrary, but this question was submitted to the jury, and it found in favor of the appellee.

The appellee proved that the construction and equipment of its plant in every way filled the requirements of the ordinance, and that it was not deficient in any particular; that its engines and pumps were of the latest and most approved patterns, comparatively new, and apparently in the best of condition and repair; that a few days before the fire the plunger at the bottom of one of its wells became fastened, and

could not be made to perform its work; that they worked night and day from the time of the mishap, and were working on it at the time of the fire, endeavoring to make it work, but could not do so, and finally had to abandon the well and sink a new one; that this accident happened without any notice to it, and could not have been anticipated or foreseen, and occurred without any fault whatever on its part, and by reason of this unavoidable accident it failed to have its mains and hydrants supplied with the usual quantity of water and in good working condition. It also proved that, notwithstanding this, the two wells in working condition were sufficient, under ordinary circumstances, to have supplied the usual and necessary amount of water, but, on account of the unusual drought, and waste of water by the citizens, it was unable at the moment of the fire, and for a short time thereafter, to supply the necessary amount of water.

The court, under instructions, submitted these questions to the jury, who found in favor of appellee. The court overruled appellant's motion for a new trial, and it has appealed.

The appellant makes serious objection to the following instruction: "The court further instructs the jury that, although it may believe from the evidence that at said fire there was on hand, in time to have extinguished the fire, such fire company as stated in instruction No. 1, and that it was sufficiently equipped with apparatus for fighting fire as therein stated, and that such fire company, so situated and equipped, could and would have prevented the loss or damage to said tobacco as therein stated, and that their failure to do so was because such hydrant or hydrants were not supplied with water, and it or they were not in effective working order, yet, if the failure of the hydrants to be supplied with water, or to be in effec-

vol. 120—4

tive working order, was due to accidental causes, not the result of defendant's negligence, and which it could not, by the use of ordinary diligence, have foreseen and prevented, then the law is for the defendant, and the jury should so find; and the court further says to the jury that by the use of the term 'hydrant,' in this instruction, is meant any of the means or parts of the defendant's waterworks system by which it supplies the public fire plugs with water.'' The appellant contends that under the contract the appellee was not excused from furnishing a sufficient supply of water by reason of any accident of any character to the water plant, except it be the act of God or the public enemy, and that the only question to be determined by the jury was whether or not, had there been a sufficient supply of water, the fire company as organized and equipped could have extinguished and saved the property under all the circumstances proven in the case. Whether or not appellant is right in this contention depends upon the proper construction of the contract. The general rule for construing a contract is to take it as a whole, and, if possible, ascertain the true meaning and intent of the parties. Another general rule is that where there is any ambiguity in a contract, or any doubt concerning the meaning and intent of any part of it, it should always be resolved against the party preparing it, if it can be done without doing violence to the rights of the parties thereto. With these principles in view, let us consider the contract before us, to-wit, the ordinance of the city, prepared by its council for the benefit of the city and the citizens thereof, and accepted by the appellee. By section 8 it is provided that the appellee should keep all fire hydrants supplied with water, and should maintain them in effective working order, except during the time of repairing or removing any hydrant which

had become ineffective by accident, or other cause than willful negligence on the part of appellee. Is it reasonable to presume that the parties to this con-. tract intended to relieve the appellee for the failure to supply water when an unavoidable accident occurred to the small thing called the "hydrant," and yet to hold it responsible when an unavoidable accident happened to the water mains, standpipe, the engine, pumps, or plunger, or other material part of the plant which supplied the hydrants? Certainly the parties, in entering into this contract, did not intend it to have that meaning and effect. If appellant's contention be correct—that appellee was bound at all hazards to furnish water, the act of God or the public enemy alone excusing it—then why specify in the contract the character and dimensions of the standpipe, the size of and the depth to which the water mains were to be laid under cover, the character and number of pumps, engines, the public test, and requirements of it, and especially why incorporate the language as used in section 8, and the other things specified in the ordinance? If appellant's contention be correct, all these things were useless and superfluous. In such case the only contract necessary would have been for the appellee to have bound itself to furnish at all times a supply of water sufficient to throw three simultaneous streams through a 1-inch ring nozzle to a height of 80 feet in the business part of the city, or to have obligated itself to furnish a supply of water sufficient for the uses of the city and the citizens, and an ample supply to put out fire. We are of the opinion that the parties, on entering into this contract, did not mean this, but, upon the contrary, taking the whole contract, they meant and intended that the appellee should furnish an ample supply of water for all purposes and at all times, unless prevented by an ac-

cident to the water plant which by ordinary prudence could not have been anticipated or foreseen and provided against.  Entertaining these views, we are of the opinion that the instructions given by the lower court were proper, or at least not prejudicial to the substantial rights of the appellant.  (See Owensboro Water Co. v. Duncan's Adm'x, etc., 32 S. W., 478, 17 Ky. Law Rep., 755.)

As to the question of whether or not the appellant is entitled to be subrogated to the rights of Ligon, Allen & Co., under the terms of the contract, as provided in the policy, we do not determine, as it is not necessary to the disposition of the case.

Wherefore the judgment of the lower court is affirmed.