W. B. AND C. L. MORTON v. WASHINGTON LIGHT AND WATER
COMPANY.

(Filed 14 April, 1915.)

1. **Water Companies—Contracts with City—Rights of Citizens—Fire Damage.**

A citizen whose property has been destroyed by fire may recover damages of a water corporation for a breach of its contract with the city "to afford a supply of water for the use of the citizens—and protection from fire," when the damages were proximately caused thereby. *Gorrell v. Water Co.*, 124 N. C., 328, cited and sustained.

2. **Same—Decisions—Corporation Charter—Implied Provisions.**

The right of a citizen and taxpayer to recover for the loss of his property by fire caused by the failure of a water corporation to perform its contract with the city to furnish a supply of water for fire protection, impliedly incorporates within the provisions of its charter the law then existing; and in this action for damages for destruction by fire, it appearing that *Gorrell v. Water Co.*, 124 N. C., 328, had been decided some two years before the defendant had acquired its charter, it acquired its charter rights subject to the doctrine therein announced by the Supreme Court.

3. **Pleadings—Amendments—Court's Discretion—Appeal and Error.**

An exception to an amendment allowed in the discretion of the trial judge, which does not change the issues raised by the pleadings, will not be considered on appeal unless this discretionary power has been abused; and the same rule applies when the issues are changed, unless it appears that the appellant has been prejudiced in not being able to secure and introduce his evidence.

4. **Water Companies—Contract with City—Breach—Damage by Fire—Other Fires.**

Where a citizen sues a water company for damages from fire alleged to have been caused by the failure of the defendant to supply the agreed quantity of water for fire protection under a contract with the city, and the evidence thereon is conflicting, it is competent for the plaintiff to show that the defendant had failed to thus supply water at other fires which had occurred under ordinary and usual conditions.

5. **Appeal and Error—Unanswered Questions.**

An exception to the exclusion of an answer to a question asked a witness will not be considered on appeal unless it is made to appear that its exclusion was prejudicial to the appellant.

6. **Corporations—Officers—Subsequent Declarations—Principal and Agent—Evidence.**

After the president and superintendent of a water corporation have been permitted to testify in its behalf as to the condition of the plant, in an action by a citizen to recover damages for a fire loss, it is competent for the plaintiff to show on their cross-examination, and by other witnesses, declarations, made by them after the fire, to contradict their testimony; for declarations of this character do not fall within the prohibition as to declarations of ordinary agents made after the act complained of.

### 7. Pleadings—Tax Lists—Impeaching Evidence.

Where the complaint in an action to recover damages for property destroyed alleges that its valuation for taxation is the true one, the tax list thereof is competent to contradict the plaintiff's testimony at the trial, and the ordinary rule does not apply.

BROWN, J., concurring in result; WALKER, J., dissenting; HOKE, J., concurring in dissenting opinion.

APPEAL by defendant from *Bragaw, J.,* at December Term, 1913, of BEAUFORT.

This action is a consolidation of two actions originally brought and entitled "Charles L. Morton v. Washington Light and Water Company" and "W. B. Morton, trading as W. B. Morton & Co., v. Washington Light and Water Company." The alleged damage in each instance was based upon the same alleged negligence, and at the trial of the action the two causes were consolidated, by consent.

The plaintiff Charles L. Morton was originally suing for the destruction of a store building owned by him; by a fire which occurred on the night of 27 July, 1911, and the plaintiff W. B. Morton was suing for the destruction or loss of a stock of goods contained in the store at that time and owned by the said W. B. Morton.

Both plaintiffs, in their complaint, alleged that the defendant entered into a contract with the town of Washington in 1901 to build and maintain a water-works system and to furnish a certain pressure with which to fight fires; that on the night of 27 July, 1911, a fire originated in a building adjoining the building of the plaintiff Charles L. Morton, and that by reason of the negligent failure of the defendant company to furnish the pressure which it contracted to furnish, the fire, originating in the George Morton building (that is, the building adjoining the Charles L. Morton building), spread to and destroyed or burned the building of the plaintiff Charles L. Morton, and the stock of goods therein, owned by the plaintiff W. B. Morton.

The contract stipulated that it was "to afford a supply of water for the use of the citizens of the town of Washington, and in order to furnish protection from fire to the property of said citizens."

The buildings were separated by a wooden partition.

The building owned by Charles L. Morton was insured for the sum of $4,000, which insurance he collected. The stock of goods owned by W. B. Morton was insured for $1,000, which insurance he collected.

The plaintiff Charles L. Morton, in his original complaint, sued for $2,000 for damage to the building and the plaintiff W. B. Morton sued for $1,500 for loss of personal property.

At the time and upon the day the cause was set for trial the plaintiff Charles L. Morton, for the first time, asked leave of the court to amend

his complaint. The court, in its discretion, over the objection of the defendant, permitted the amendment. The defendant thereupon moved the court for a continuance of the cause until the next succeeding term. This motion the court refused, but continued the cause until the next succeeding day, or for a period of about twenty-four hours.

The following verdict was rendered by the jury:

1. At the time of the injury to and destruction of the property of plaintiffs by fire, had the defendant water company undertaken to furnish the city of Washington a supply of water according to the plans and specifications contained in the agreement and contract of 11 December, 1901, as set out in the complaint, in the quantity, under the pressure, and for the purposes therein recited? Answer: "Yes."

2. At such time was said defendant company engaged in supplying water to said city of Washington under and pursuant to said agreement and contract, and in the exercise and enjoyment of the privileges of the same, and demanding and collecting from the said city the price stipulated in the said agreement for furnishing water, at its customary times for making such collections, during the year and period in which plaintiff's loss accrued? Answer: "Yes."

3. At the time of the injury to and destruction of the property of the plaintiffs by fire, did the defendant water company fail and neglect to furnish the quantity and pressure of water it had agreed to furnish on occasion of fire in its said contract with the city of Washington? Answer: "Yes."

4. If so, was the property of the plaintiffs injured and destroyed by the negligence of defendant, as alleged in the complaint? Answer: "Yes."

5. If so, what damages, if any, is the plaintiff Charles L. Morton entitled to recover of the defendant? Answer: "$2,500, with interest."

6. If so, what damages, if any, is the plaintiff W. B. Morton entitled to recover of the defendant? Answer: "$1,000, with interest."

The defendant raised the question as to its liability to the plaintiff by exception to the judgment, prayers for instruction, and by motion for judgment of nonsuit.

There are other exceptions relied on which will appear in the opinion of the Court.

There was judgment for the plaintiffs, and the defendant appealed.

*Daniel & Warren and A. D. McLean for plaintiffs.*

*Rodman & Bonner, W. B. Rodman, Jr., W. A. Wilcox, and W. J. Wilcox for defendant.*

ALLEN, J. The principles announced in *Gorrell v. Water Co.,* 124 N. C., 328, establish the liability of the defendant to the plaintiffs upon

the facts found by the jury and those admitted in the pleadings, and the defendant, realizing this, asks us to overrule that case. We have therefore reëxamined the decisions in this and other jurisdictions, and the arguments and reasoning upon which they rest, and after full consideration have determined to adhere to the former ruling of this Court.

It may be conceded, as contended by the defendant, that the weight of authority, measured by number, is against the decision in the *Gorrell* case, but this was known and considered at the time of its rendition, and since then, instead of receding from the position then taken, the doctrine has been affirmed in *Fisher v. Water Co.,* 128 N. C., 375; *Lacy v. Webb,* 130 N. C., 546; *Gastonia v. Engineering Co.,* 131 N. C., 368; *Wadsworth v. Concord,* 133 N. C., 594; *Vorhees v. Porter,* 134 N. C., 602; *Kernodle v. Tel. Co.,* 141 N. C., 445; *Holmes v. Tel. Co.,* 143 N. C., 393; *Wood v. Kincaid,* 144 N. C., 395; *Clark v. Bonsal,* 157 N. C., 275; *Brady v. Randleman,* 159 N. C., 436, and in *Jones v. Water Co.,* 135 N. C., 554.

In the last case the contract was similar to the one now before us, and the Court said, upon the right to sue: "There can be no real contention that the plaintiff, a citizen and taxpayer, and one of the beneficiaries in the purview of this contract, cannot prosecute this action. He is the real party in interest. He is taxed with payment of his pro rata of the annual rental. The town cannot maintain this action for the loss sustained by him by reason of the defendant's failure to perform the provisions of the contract above recited. For this injury the plaintiff alone can sue. This point was discussed and settled in *Gorrell v. Water Co.,* 124 N. C., 328 (70 Am. St. Rep., 598; 46 L. R. A., 513), which has been followed in *Fisher v. Water Co.,* 128 N. C., 375, and cited and approved in *Lacy v. Webb,* 130 N. C., 546, and *Gastonia v. Engineering Co.,* 131 N. C., 368, in which last the doctrine is elaborated. The same principle had been often affirmed prior to *Gorrell's case,* towit, that "the beneficiary of a contract, though not a party to it nor expressly named therein, can maintain an action for a breach of such contract causing injury to him, if the contract was made for his benefit."

It also appears that the case has been followed in *Mugge v. Tampa Water-works,* 52 Fla., 371, and *Springfield Ins. Co. v. Graves County Water Co.,* 120 Ky., 40; and in *Guardian Trust Co. v. Fisher,* 200 U. S., 57, the Court, affirming the principle, says: "It is true that a company contracting with a city to construct water-works and supply water may fail to commence performance. Its contractual obligations are then with the city only, which may recover damages, but merely for breach of contract. There would be no tort, no negligence, in the total failure on the part of the company. It may also be true that no citizen is a party to such a contract, and has no contractual or other right to recover for

the failure of the company to act; but if the company proceeds under its contract, and operates its plant, it enters upon a public calling. It occupies the streets of the city, acquires rights and privileges peculiar to itself. It invites the citizens, and if they avail themselves of its conveniences and omit making other and personal arrangements for a supply of water, then the company owes a duty to them in the discharge of its public calling, and a neglect by it in the discharge of the obligations imposed by its charter, or by contract with the city, may be regarded as a breach of absolute duty, and recovery may be had for such neglect. The action, however, is not one for breach of contract, but for negligence in the discharge of such duty to the public, and is an action for a tort."

Another reason for refusing to sustain the position of the defendant is that it entered into the contract with the city of Washington in 1901, two years after the *Gorrell case* was decided, and as all laws relating to the subject-matter of a contract enter into and form a part of it as if expressly referred to or incorporated in its terms (*Lehigh Water Co. v. Easton,* 121 U. S., 391; *Wooten v. Hill,* 98 N. C., 53), it was within the contemplation of the parties at the time the contract was made that the defendant would be liable to the citizen for loss by fire caused by its negligent failure to perform the terms of the contract, as held in the *Gorrell case,* and to hold otherwise now would relieve the defendant of a responsibility which it knowingly assumed.

The other exceptions relied on by the defendant will be considered in the order in which they are discussed in the briefs.

(1) The amendment to the complaint, which was filed by permission of the court on the day before the trial, only added an additional item of damage, and did not change the issues raised by the pleadings, and it does not appear in the record that the time allowed the defendant to prepare its evidence was not ample.

The rule as to a continuance when new parties are made or amendments allowed is correctly stated in *Watson v. R. R.,* 164 N. C., 180, where the Court says: "If new parties are made or amendments allowed, which change the issues, and a party is not prepared with his evidence to meet the changed conditions, he is entitled to a continuance as a matter of right (*Dobson v. R. R.,* 129 N. C., 291); but ordinarily the ruling of the judge upon a motion for continuance is a matter of discretion, and not reviewable, and in this case it appears that there was no change in the pleadings or issues, and no suggestion that it would be more prejudicial to the defendant to try at that time than at any other."

It does not appear that the defendant has been prejudiced, or that the discretion vested in the trial judge has been abused, and the exception to the refusal to continue must therefore be overruled.

(2) The plaintiffs introduced evidence tending to prove that the capacity of the defendant's plant had decreased since its installation, and the defendant's evidence was that it had at all times complied with its contract.

The plaintiffs further introduced evidence, the defendant objecting thereto, that the defendant had failed to supply water according to its contract at other fires before the fire which destroyed the property of the plaintiffs.

This evidence does not fall under the condemnation of the rule which forbids the proof of other negligent acts as evidence of the negligence complained of, and was competent upon the question as to the condition and capacity of the plant at the time of the fire.

There were no exceptional circumstances connected with the other fires, and, so far as the evidence disclosed, the plant was in its usual condition.

If so, and the capacity had decreased, as the plaintiffs contend, the fact that it did not furnish water according to the contract at other fires would be some proof that it could not do so at the time of the fire complained of. The evidence comes within the principle of the case of *Blevins v. Cotton Mills,* 150 N. C., 493.

(3) A witness for the plaintiff was asked a question by the defendant on cross-examination, which the court refused to permit the witness to answer, but as there is nothing to indicate what the answer of the witness would have been, the exception to the action of the court cannot be considered. *Wallace v. Barlow,* 165 N. C., 676.

(4) The defendant introduced its president and superintendent, each of whom testified substantially that the plant of the defendant was at all times properly equipped and maintained, and the plaintiffs were permitted to prove upon cross-examination, and by other witnesses, declarations of the president and superintendent, made after the fire, tending to contradict their testimony.

This does not come within the principle excluding the declarations of an agent as to a past occurrence, and the evidence was properly admitted. The rule and the exception are applied in *Pate v. Steamboat Co.,* 148 N. C., 573, as follows: "Of course, the declarations of the boat hand, made after the occurrence, are incompetent for the purpose of proving the dangerous condition of the bateau. *Southerland v. R. R.,* 106 N. C., 100. But, having been examined by the defendant as its witness as to the condition of the bateau, it was competent to impeach or contradict his evidence upon that point by his declarations on that subject to Glover. To lay the foundation for offering such impeaching evidence, it was proper to ask the witness on cross-examination the question objected to."

(5) The plaintiffs introduced evidence of the value of the property destroyed by the fire. The defendant introduced the complaint, in which it is alleged that this property was valued for taxation at its *true value,* and then offered the tax list for the purpose of proving the value for taxation to be less than as shown by the evidence for the plaintiffs, which the court excluded.

Authority can be found in support of the general proposition that the tax list is inadmissible upon the question of value, but in none of the cases was the fact present as in this, that the party against whom it was offered had alleged that the tax list showed the true value.

If the plaintiff had made a declaration as to value on the streets, no one would question the right to offer this declaration against him, nor would the right to look at the tax list to ascertain the value be denied if it had been attached to the complaint as an exhibit.

If so, it can make no difference, as to the competency of the evidence, that the true value appeared on the tax list in the office of the sheriff or of the register of deeds instead of attaching the list to his complaint, and in our opinion the evidence ought to have been received.

This entitles the defendant to a new trial, but it is restricted to the issue of damages.

Partial new trial.

Note to opinion of the Court by MR. JUSTICE ALLEN, showing precedents to sustain the right of the plaintiff to recover under the contract made between the water company and the town:

*Gorrell v. Water Co.,* 124 N. C., 328; *Fisher v. Water Co.,* 128 N. C., 375; *Lacy v. Webb,* 130 N. C., 546; *Gastonia v. Eng. Co.,* 131 N. C., 368; *Wadsworth v. Concord,* 133 N. C., 594; *Voorhees v. Porter,* 134 N. C., 602; *Kernodle·v. Tel. Co.,* 141 N. C., 445; *Holmes v. Tel. Co.,* 143 N. C., 393; *Wood v. Kincaid,* 144· N. C., 395; *Clark v. Bonsal,* 157 N. C., 275; *Brady v. Randleman,* 159 N. C., 436; *Jones v. Water Co.,* 135 N. C., 554; *Mugge v. Tampa Water-works,* 52 Fla., 371; *Springfield Ins. Co. v. Graves County Water Co.,* 120 Ky., 40; *Guardian Trust Co. v. Easton,* 121 U. S., 391; *Wooten v. Hill,* 98 N. C., 53.

WALKER, J., dissenting: The quotation from the contract between the town of Washington and S. S. Spruks, predecessor of defendant, which appears in the opinion of the Court, was taken from the first preamble of the agreement, and is of no special significance, when viewed in the light of subsequent provisions, as it should be (*Gudger v. White,* 141 N. C., 507; *Triplett v. Williams,* 149 N. C., 394; *Beacom v. Amos,* 161 N. C., 357), and considered with reference to the principles of law recognized and applied by *all* the authorities. I have said *all* the authorities, because· it will be found, upon the most cursory examination, that the cases to which the Court refers in its opinion do not present the facts we have in this case, but those which are essentially different, as I will show. It is well, in the beginning of the discussion, to understand pre-

cisely the terms of this contract, so that I may make it perfectly clear that it bears no legal analogy to those contracts which were involved in the cases relied on by the Court. An analysis of the contract will place the matter squarely before us, upon its own legal merits' and without regard to the construction or enforcement of agreements having different phraseology and, therefore, susceptible of a different meaning. The general scope of the contract shows that it was made for the purpose of supplying the town of Washington with water for the domestic use of its citizens; for use at public fountains; for the operation of its sewer system, if it should be established during the life of the contract, and for fire protection. The consideration for these public benefits was to be paid by the town, in the form of rent for the hydrants, at so much for each of them per year, and in addition thereto "a franchise or license" to construct and operate the contemplated system of water-works for thirty years and to use the streets of the town for that purpose. It is recited in the contract that the town granted the franchise and agreed "to rent the hydrants," not less than fifty in number, in consideration of the benefits that will be derived by the town and its inhabitants and the water supply for public use. Provision is also made for an additional number of hydrants at the same price as for the original ones. Then come the provisions:

1. "The commissioners for the town of Washington agree to use the said hydrants for the extinguishment of fires only, except as hereinafter provided. It is expressly agreed that if said rent be not paid when due as above specified, then the water supply may be cut off without any liability to any one from said company."

2. "A constant water pressure equal to 50 pounds per inch for ordinary service shall be maintained, which upon the occasion of fires shall, *if necessary,* be increased by means of suitable pumps to 75 pounds per inch." (In order to meet this requirement, a pump house, with machinery, fixtures, and power sufficient to supply 360,000 gallons of water per day and stand-pipe with a capacity of 50,000 are agreed to be maintained.)

3. "Water from the fire hydrants may be used for the extinguishment of fire and for the necessary fire practice only: *Provided,* that not more than two companies be allowed to practice on the same day without permission from the water company; and *Provided further,* that said practice shall not be oftener than once in each week, and not more than two hydrants shall be open at one time. The fire hydrants rented by the town of Washington shall constantly furnish effectual fire streams without the aid of portable engines. The said fire hydrants shall be kept constantly supplied with water for fire service, and shall be maintained in effectual working order."

4. It is then provided that the fire hydrants shall be under the control and inspection of the chief of the fire department of the town, and if any hydrant shall be out of order at any time, after notice thereof, the owner is required to repair the same, and upon his failure to do so a deduction of $5 per week from the rental shall be made and continue until the proper repairs are made, "which shall be the limit of any damage or liability."

5. The owner, after the system shall be completed and in operation, "shall·not suffer the suspension of the supply of water, either for fire or domestic purposes, unless the same shall be caused by accident or cause beyond his control; and in case of accident or other cause, said Spruks shall forthwith proceed with all possible diligence to repair and put the same in successful operation; and if said Spruks, his associates or assigns, suspend or fail to make such repairs as herein required, then the rights and privileges granted hereby shall be forfeited."

6. The contract was evidenced by an ordinance of the town, which was accepted by S. S. Spruks, and with, reference thereto it is provided as follows: "This ordinance shall become binding upon the town of Washington in the event that the said S. S. Spruks, his associates or assigns, shall, within thirty days after the passage and publication of this ordinance, file with the town clerk of the said town of Washington its written acceptance of the terms, obligations, and conditions of this ordinance, and upon the filing within thirty days thereafter of· a bond, to be approved by the board of commissioners for the town of Washington, in the penal sum of $2,500, conditioned for the faithful performance of the erection of said plant as is herein provided for, and thereupon this ordinance shall constitute the contract, and shall be the measure of the rights and liabilities of the town of Washington and of the said S. S. Spruks, his associates and assigns."

There is a provision in the contract that if S. S. Spruks or his assigns "cannot get a supply of water, such as is required by section 2 of this ordinance, at a reasonable expense, (he) shall have the right to surrender the franchise and the ordinance shall be void."

Section 2 refers to the pure quality of the water for domestic purposes.

The plaintiffs allege that the alleged cause. of action accrued to them by reason of the defendant's negligent failure to furnish sufficient water and pressure at the hydrants.

In view of the above provisions of the contract *now* under consideration, it may be well to state, at the outset, that it bears no legal resemblance to those which were construed in *Gorrell v. Water Co.,* 124 N. C., 328; *Fisher v. Water Co.,* 128 N. C., 375; *Mugge v. Tampa Water-works,* 52 Fla., 371; *Springfield Ins. Co. v. Graves County Water Co.,* 120 Ky., 40, and *Guardian Trust Co. v. Fisher,* 200 U. S., 57, the cases mainly

relied on by the Court. As to the other cases cited, viz., *Lacy v. Webb,* 130 N. C., 546; *Gastonia v. Eng. Co.,* 131 N. C., 368; *Wadsworth v. Concord,* 133 N. C., 594; *Voorhees v. Porter,* 134 N. C., 602; *Kernodle v. Tel. Co.,* 141 N. C., 445; *Holmes v. Tel. Co.,* 143 N. C., 393; *Wood v. Kincaid,* 144 N. C., 395; *Clarke v. Bonsal,* 157 N. C., 275; *Brady v. Randleman,* 159 N. C., 436, they merely refer to the general doctrine that, within a certain limit, a person for whose benefit a contract, if made, may sue upon it, and the limitation of the principle is that the contract must have been made *directly* for his benefit. The *Gorrell* and *Fisher cases* involved the construction of one and the same contract between the city of Greensboro and the Water Supply Company, which contained this clause: "Said water company shall be responsible for all damage sustained by the city, or any individual or individuals, for any injury sustained from the negligence of the said company, either in the construction or operation of their plant." And the same may be said of the other two cases cited, *Paducah Lumber Co. v. Paducah Water Supply Co.,* 89 Ky., 340, and *Mugge v. Tampa Water-works,* 52 Fla., 371. In the Kentucky case there was a separate contract between the consumer and the water company which required the fire pressure to be furnished, and in the Florida case there was an express provision in favor of the consumer. That case was heard on demurrer and, of course, we understand that the facts stated in the declaration are to be taken as admitted, and the allegation is therein made that the company stipulated that it would protect the property of the consumer against injury or destruction by fire, or, at least, exercise reasonable care to do so. This special understanding was broadly stated in the complaint and admitted by the demurrer. It is conceded in the opinion of the Court in that case that the great weight of authority is contrary to its ruling, and a large number of cases decided in the other States are cited which hold the other way. Referring to the Kentucky case, the Supreme Court of Louisiana strongly criticises it. The position of the Louisiana court in 1900, as stated in *Planters Oil Mill v. Monroe Water-works Co.,* 52 La. Anno., 1243, was much like that taken in the *Paducah* and *Gorrell cases,* but in 1905 that case was overruled, without a dissent, in *Allen & Currey Mfg. Co. v. Shreveport Water-works Co.,* 113 La. Anno., 1091, a majority of the Court having taken part in the earlier decision. In the later case the Court says: "We conclude that the engagement of the defendant company to the city of Shreveport to furnish water to her for the use of her fire department was not a stipulation *pour autrui.* We have discussed the case thus far as if the question it involves were *res nova;* but the exact question has been decided repeatedly in other jurisdictions, and once already by this Court. Upon the latter decision (*Planters Oil Mill v. Monroe Water-works and Light Co.,* 52 La. Anno., 1243, 27 So., 684) the plaintiff

places much reliance. But for the reasons hereinabove given, we are not satisfied with the conclusion there reached, and we have concluded to overrule it. By doing so we take this Court from among a slender minority and range it among the very large majority of the courts of the country which have had occasion to consider this question." This was said after a very able and learned discussion of the matter from every possible standpoint and the citation of all the cases upon the subject, with a careful review of many of them. A petition to rehear that case was filed and afterwards denied by the Court. We have specially referred to the case, as it contains an unusually clear and logical treatment of the question, and the conclusion, which was most carefully considered, involved the overturning of a prior decision. But the Court did not hesitate to do this and place itself in line with the numerous cases which were in direct conflict with its former ruling. In *Lovejoy v. Bessemer Waterworks Co.*, 146 Ala., 374, the *Chief Justice* considers the question at length, and reviews the entire range of authorities. He says: "The overwhelming weight of authority is against the right of the plaintiff to maintain this action. The reason why he may not do so is that there is want of privity between him and the defendant which disables him from suing for a breach of the contract, or for the breach of duty growing out of the contract. It is impossible at this late day to say anything new upon the subject, and it would be affectation to attempt any elaborate discussion of the question involved. Only two courts in the United States, as far as we can ascertain, have sustained an action of this kind. The first case is *Paducah Lumber Co. v. Paducah Water Supply Co.*, 89 Ky., 340, which cited no authorities, and which holding was unnecessary, since there was in that case a private contract between the water company and the consumer which required the fire pressure to be furnished. The later Kentucky cases but followed the first decision. In *Gorrell v. Greensboro Water Supply Co.*, 124 N. C., 328, it was held by a divided Court that a similar action would lie. The decision was rested upon the principle, stated by the Court in general terms, that one not a party or privy to a contract, but who is a beneficiary thereof, is entitled to maintain an action for its breach; and many cases are cited which are assumed to sustain the general proposition, which was stated without qualification. It is not true, however, that the principle can be maintained to the full extent and in the unqualified terms stated by the Supreme Court of North Carolina in the *Gorrell case.*" The Florida case had not been reported, if it had been decided, at that time. The Court, in *Hone v. Presque Isle Water Co.*, 104 Me., 217, delivered a strong opinion denying the right of a consumer to recover upon such a contract as we have in this record. Referring to the cases to the contrary, it said: "On the

other hand, three cases are cited in support of the plaintiff's contention that such an action for negligence is maintainable in favor of an individual owner of property against a water company under contract with the municipality to furnish a supply of water. The first case in which this doctrine is held is *Paducah Lumber Co. v. Paducah Water Co.,* 89 Ky., 340. But it distinctly appears in the opinion in that case that there was a private contract directly between the water company and the plaintiff lumber company, and no cases are cited in the opinion, and the case itself is not an authority to sustain the plaintiff's contention at bar. *Gorrell v. Greensboro Water Supply Co.,* 124 N. C., 328, and *Mugge v. Tampa Water-works Co.,* 52 Fla., 371, follow the *Paducah case* in Kentucky, although the facts are materially different. It is sufficient to observe that the reasoning in these cases is not satisfactory." Speaking for myself, I do not concur in the last comment of that Court with reference to the *Gorrell* and *Mugge cases.* The special clause in the *Gorrell* contract making the company liable to the consumer was not reported, and therefore the Court was misled as to its true nature. It is set out in *German Alliance Ins. Co. v. Home Water Co.,* 226 U. S., 220 (to which we will hereafter refer), and some stress laid upon it, as, perhaps, differentiating it from the other cases; and in the *Mugge case,* as I have already shown, the plaintiff stated the contract his own way, according to his conception of it, and the demurrer admitted the allegation, which contained a clause of special liability to the consumer. The *Paducah, Gorrell,* and *Mugge cases* may, therefore, be sustained upon this ground, provided it is sound doctrine that it is within the power of a municipal corporation to make such a contract for the individual inhabitant of the town or city, which some of the cases seriously question; but it is not necessary that I should pause to discuss that matter. It is stated in 23 L. R. A. (note to *Howsmon v. Trenton Water Co.*), at p. 147: "The general doctrine deducible from all opinions is that the water-works company is not liable for the inadequate supply of water for fire purposes, under a contract with a city or corporation to furnish water for the extinguishment of fire." The same is substantially said in 21 L. R. A. (N. S.), p. 1021, where all the more recent cases on the subject are collected, presenting a uniform course of decision, the three cases deciding otherwise being exceptional in their character, because of the special clause by which the water company stipulates for its responsibility directly to the consumer. At p. 1021 of 21 L. R. A. (N. S.) (note to *Hone v. Water Co., supra*) the following conclusion, after a minute consideration of all the cases, is thus stated: "The great weight of authority denies the right of a property owner to maintain an action against the water company for loss of his property proximately resulting from its failure to provide sufficient water for fire purposes as required by its

168—38

contract with the municipality." In order to show the practical unanimity of the courts upon the principle just stated, I have cited some of the leading cases in a note appended to this opinion.

But a very luminous discussion of the question will be found in a case recently decided by the Supreme Court of the United States, *German Alliance Ins. Co. v. Home Water Co.,* 226 U. S., 220 (2 Dec., 1912) in which the opinion was written by *Mr. Justice Lamar.* It is of great practical value, as the matter is considered from the viewpoint of the difference between the contracts passed upon in the *Paducah, Gorrell,* and *Mugge cases,* and those upon which a large number of the cases were decided. It also shows conclusively that the case of *Guardian Trust Co. v. Foster,* 200 U. S., 571, opinion by *Mr. Justice Brewer,* which is much relied on in the opinion of the Court in the case at bar, is really no authority for the position now taken. The question in the *Fisher case* related entirely to the character of the cause of action therein, whether in contract or tort, and the Court simply followed the construction of our statute upon the subject by this Court. Referring to the *Fisher case,* the Court in *G. A. Insurance Co. v. Home Water Co.* says: "It was urged, among other things, by the bondholders that the suit in the State court was really for breach of contract, and that entering the judgment as for a tort did not change the nature of the action so as to entitle the plaintiff to the benefits of the North Carolina statute. It was that question alone, as to the character of the suit and judgment, which was before this Court. What was said in the opinion must be limited, under well-known rules, to the facts and issues involved in the particular record under investigation. The *Fisher case* could not have decided the primary question as to the right of the taxpayer to sue, for that issue had been finally settled by the State court. It raised no Federal question and was not in issue on the hearing in this Court. Neither did the *Fisher case* overrule the principle announced in *National Bank v. Grand Lodge,* 98 U. S., 123, 124, that a third person cannot sue for the breach of a contract to which he is a stranger unless he is in privity with the parties and is therein given a direct interest." That disposes of the *Fisher case* (200 U. S., 57) as an authority against my view. *Justice Lamar,* in the later case of *G. A. Ins. Co. v. Home Water Co.,* just cited by me, shows conclusively that the doctrine upon which the plaintiff relies cannot be sustained. He says, at p. 230: "Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must at least show that it was intended for his direct benefit. For, as said by this Court, speaking of the right of bondholders to sue a third party who had made an agreement with the obligor to discharge the bonds, they 'may have had an indirect interest in the performance of the undertakings; but that is a very different thing from

the privity necessary to enable them to enforce the contract by suits in their own names.' *Natl. Bank v. Grand Lodge,* 98 U. S., 123, 124. *Hendrick v. Lindsay,* 93 U. S., 143, 149; *Natl. Savings Bank v. Ward,* 100 U. S., 195, 202, 205. Here the city was under no obligation to furnish the manufacturing company with fire protection, and this agreement was not made to pay a debt or discharge a duty to the Spartan Mills, but, like other municipal contracts, was made by Spartanburg in its corporate capacity, for its corporate advantage, and for the benefit of the inhabitants collectively. The interest which each taxpayer had therein was indirect—that incidental benefit only which every citizen has in the performance of every other contract made by and with the government under which he lives, but for the breach of which he has no private right of action. He is interested in the faithful performance of contracts of service by policemen, firemen, and mail contractors, as well as in holding to their warranties the vendors of fire engines. All of these employees, contractors, or vendors are paid out of taxes. But for the breaches of their contracts the citizen cannot sue, though he suffer loss because the carrier delayed in hauling the mail, or the policeman failed to walk his beat, or the fireman delayed in responding to an alarm, or the engine proved defective, resulting in his building being destroyed by fire. 1 Beven Negligence in Law (3 Ed.), 305; Pollock on Torts (8 Ed.), 434, 547; *Davis v. Clinton,* 54 Iowa, 59, 61. Each of these promisors of the city, like the water company here, would be liable for any tort done by him to third persons. But for acts of omission and breaches of contract he would be responsible to the municipality alone. To hold to the contrary would unduly extend contract liability, would introduce new parties with new rights, and would subject those contracting with municipalities to suits by a multitude of persons for damages which were not, and in the nature of things could not have been, in contemplation of the parties." He directs attention to the special feature in the Gorrell contract, by which the water company undertook to become directly responsible to the injured consumer, as one of its patrons, and this applies equally to the *Paducah, Gorrell,* and *Mugge cases.* The contract, as shown in this record, is substantially like the one construed in *Ins. Co. v. Home Water Co.* I have quoted somewhat at length from the latter case, as it is a weighty authority and some of the reasons for the conclusion reached by the Court are very clearly and strongly stated. The opposing cases may well stand as correct decisions upon the particular facts presented in them, but they cannot be regarded as authorities for the plaintiff's right to recover in this case, where the contract is substantially different.

In *Jones v. Water Co.,* 135 N. C., 553, the plaintiff appealed and a new trial was given because of an erroneous charge of the judge in regard

to the stipulation of the contract as to notice. The validity of the cause of action was not questioned, though discussed incidentally, the Court treating the contract as one made for the direct benefit of the consumer. There was a provision in that contract for a forfeiture of the rent and a cancellation of the contract if the water company failed to furnish an adequate supply of water for extinguishing fires; but this clause was not adverted to, and the judgment of this Court, giving a new trial, was based on the single error in the charge. The contract now before us, as will be seen by reference to the statement of facts, provides a specific remedy in case of a breach. Speaking of a contract like the one herein sued on, Page on Contracts, sec. 1313, says that the great weight of authority holds that there can be no recovery, citing many cases in the note to sustain the text.

Every case should be tried by the touchstone of its own facts, and there should be no other criterion by which to test the correctness of its decision and its scope and influence as a precedent. Expressed in homely phrase, "Every tub must stand upon its own bottom." The contract in this case, when read as a whole and without severing any particular clause from its context, evidences a purpose on the part of the water company to avoid liability for such damages as are now claimed, and to so word the agreement as to confine the remedy for a breach to a forfeiture of the rents, or, if continued for the specified time of thirty days, to a forfeiture of all rights under the contract, or to restrict any damages for a breach to those recoverable by the town alone. The parties undoubtedly had the right to make such a contract, and it should be construed as they have written it, and the case should not be governed by precedents based upon an entirely different state of facts. We are not at liberty to make a contract for the parties, but can only enforce the one they have made for themselves.

In *Ancrum v. Water Co.,* 82 S. C., 284, a case analogous to this one in its facts, the Court, by *Justice Woods,* in a well considered opinion, held: The obligations of a water company to a citizen of a city with which it has contracted to furnish water for fire protection for damage sustained by negligent failure of the company to supply sufficient water pressure during a fire are limited by the contract between the city and the company. The contract between the city of Camden and the water company, it was further held, did not create any liability on the part of the latter to an individual, who was an inhabitant and taxpayer of the city, for a loss sustained by fire, which would have been extinguished if the water company had not neglected to comply with its contract in keeping the proper pressure on its water pipes. The Court also stated that when the city employed the water company to construct and operate the water-works, instead of doing so itself, under the *permission* given in its

charter, the liability of the water company was exactly that of the city, under similar circumstances, and no more; and further, that the parties could provide in the contract what should be the damages if there was a breach. "Equally free were the city and water company to agree on such sanctions and penalties as they saw fit for the enforcement of the obligations assumed by the water company," is the language of the Court.

The cases in at least thirty out of thirty-four States of the Union which have passed upon the question hold that the water company is not liable:

1. Because there is no privity of contract where there is no obligation, except the general one to furnish water and pressure for the extinguishment of fires, and no agreement of the company to be directly responsible to the citizen for losses by failure to do so.

2. That the municipality is under no legal duty to contract for a supply of water for such a purpose, unless it is imposed by its charter, and therefore no liability to an inhabitant could arise out of such a contract when there is such a claim.

3. That the town has no power to make any such contract in behalf of its citizens, except collectively and in discharge of its public duty, as it is not within its corporate capacity to do so.

4. That where there is no special provision, as in the *Gorrell, Paducah,* and *Mugge cases,* creating a liability to each inhabitant, who suffers a loss from fire, the contract is restricted, in its operation, to damages suffered by the municipality itself, on account of a breach to supply the necessary quantity and pressure to protect property. "The violation of a contract entered into with the public, the breach being by mere omission or nonfeasance, is no tort, direct or indirect, to private property of an individual, though he is a member of the community and a taxpayer to the Government. We are unable to see how a contractor with the city to supply water to extinguish fires commits any tort by failure to comply with his undertaking, unless to the contract relation there is superadded a legal command by statute or express law." *Fowler v. A. C. Water-works,* 83 Ga., 219.

There are other reasons assigned, but those stated are the principal ones. All will be found in the authorities cited in the note to this opinion, and especially in *G. A. Ins. Co. v. Home Water Co.,* 226 U. S., 220; *Hone v. P. I. Water Co.,* 104 Me., 217; *Holloway v. M. G. and Water Co.,* 64 S. E. (Ga.), 330; *Ancrum v. Water Co.,* 82 S. C., 284; *Hull v. Passaic,* 83 N. J. L., 771; *Fitch v. S. Water Co.,* 139 Ind., 214, and *Davis v. C. Water-works,* 54 Ia., 57, where there is an elaborate discussion of the question, with a collation of all the cases, many of which have not been cited herein.

It is suggested that all contracts are presumed to be made with reference to existing law, and *Hill v. R. R.,* 143 N. C., 576, is cited in support of this suggestion. The doctrine may be conceded, but it has no application here, as this Court had not decided the law to be as is now asserted. In *Gorrell v. Water Co.,* 124 N. C., 328, which is mainly relied on, the contract was radically different from this one, and expressly provided for the protection of individual property, and afforded a remedy for a breach of the stipulation, as we have shown. The premise of this argument is therefore disproved, for it assumes something in regard to the law which has no existence in fact, and the deduction, therefore, by reasoning from it, must be erroneous.

In view of the above reasons and the overwhelming weight of authority in the Federal and State courts supporting the view herein expressed, I am compelled, regretfully, to differ with my brethren of the majority, and to dissent from the opinion of the Court and its judgment, as I think there should be a nonsuit, instead of a new trial.

HOKE, J., concurs in the dissenting opinion of MR. JUSTICE WALKER.

NOTE OF PRECEDENTS DIRECTLY SUSTAINING DISSENTING OPINION.—*Boston Safe Dep. Co. v. Salem Water Co.,* (C. C.) 94 Fed., 238; *Metropolitan Trust Co. v. Topeka Water Co.,* (C. C.) 132 Fed., 702; *Lovejoy v. Bessemer Water-works Co.,* 146 Ala., 374; *Collier v. Newport Water, L. and P. Co.,* 100 Ark., 47; *Town of Uriah v. Uriah Water Co.,* 142 Cal., 173; *Nickerson v. Bridgeport Hydraulic Co.,* 46 Conn., 24; *Holloway v. Macon Gaslight and Water Co.,* (Ga.) 64 S. E., 330; *Bush v. Artesian, etc., Water Co.,* 4 Idaho, 618; *Davis v. Clinton Water-works Co.,* 54 Ia., 57; *Becker v. Keokuk,* 79 Ia., 419; *Peck v. Sterling Water Co.,* 118 Ill. App., 533; *Rostan v. Chicago,* 163 Ill. App., 63; *Fitch v. Seymour Water Co.,* 139 Ind., 214; *Mott v. Cherryvale Water and Mfg. Co.,* (48 Kan.) 15 L. R. A., 257; *Allen & Curry Mfg. Co. v. Shreveport Water Co.,* 113 La. Ann., 1091; *Hand v. Brookline,* 126 Mass., 324; *Hone v. Presque Isle Water Co.,* 104 Me., 217; *Wilkinson v. Light, Heat and Water Co.,* 78 Miss., 389; *Howsmon v. Trenton Water Co.,* 119 Mo., 304; *Metz v. Cape Girardeau Water-works Co.,* 202 Mo., 324; *Eaton v. Fairbury Water-works Co.,* 37 Neb., 546; *Ferris v. Carson Water Co.,* 16 Nev., 44; *Hull v. Passaic,* 83 N. J. L., 771; *Bush v. Great S. Bay Water Co.,* 82 App. Div. (N. Y.), 427; *Wainwright v. Queens,* 78 Hun. (N. Y.), 146; *Akron Waterworks Co. v. Brownless,* 10 Ohio Cir. Ct. R., 620; *Blunk v. Dennison,* 71 Ohio St., 250; *Lutz v. Tahlequah Water Co.,* (Okla.) 36 L. R. A. (N. S.), 568; *Thompson v. Springfield Water Co.,* 215 Pa., 275; *Ancrum v. Camden Water, Light and Ice Co.,* 82 S. C., 284; *Cooke v. Paris Mt. Water Co.,* (S. C.) 64 S. E., 157; *Foster v. Lookout Water Co.,* (Tenn.) 3 Lea, 42; *House v. Houston Water-works Co.,* 88 Tex., 233; *Wilkins v. Rutland,* 61 Vt., 336; *Nichol v. Huntington Water Co.,* 53 W. Va., 348; *Britton v. Green Bay Water-works Co.,* 81 Wis., 48; *Kron v. Antigo,* (Wis.) 140 N. W., 41. The cases cited in the note to the Court's opinion are easily distinguishable from this case.

BROWN, J., concurring in result: I recognize the fact that the overwhelming weight of authority, including that of the Supreme Court of the United States, is against the decisions of this Court in the *Gorrell,*

*Fisher,* and *Jones cases,* cited in the opinions in this case. But all three of those cases were decided and the opinions published before the contract in this case was entered into. Those decisions were well known to be the law of North Carolina when the franchise given to the defendant was applied for, and when it was agreed upon and its terms accepted.

Whether those cases were correctly decided or not, they were the accepted law of this State at that time, and upon well established principles entered into and formed a part of the contract under which the defendant operated, unless there is something to be found in the contract excluding such hypothesis.

In referring to this well settled rule of law, *Mr. Justice Walker* says, in *Hill v. R. R.,* 143 N. C., 576: "We adopted that rule in *Long v. Walker,* 105 N. C., 109, where it was held that a former adjudication of the Court in construing a statute or the organic law should stand, when it has been recognized for years, and in such case the principle settled or the meaning given to the statute becomes a rule for guidance *in making contracts,* and also a rule of property, and that it should not be disturbed, even though the conclusion reached may not be satisfactory to the Court at the time the same matter is again presented."

Under the decisions of this Court, the contract was made by the city for the benefit of its citizens, and they had a right to sue on it for a breach thereof.

It was perfectly competent for the defendant to have inserted a clause in the contract excluding such right or providing that the defendant would indemnify and hold harmless the city, or that the city only should sue.

It could easily have been made to appear from the contract, if such was the agreement of the parties, that the defendant was dealing exclusively with the city, and was accountable only to it.

Taking this contract as a whole, there is nothing in it from which we can infer that the city alone must sue for its breach.