## Louisville Gas and Electric Company v. Sherman.

(Decided March 28, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Gas—Construction of Franchise.—In construing franchise of gas company, all of the terms and provisions contained therein should be looked to, and every part thereof should be given some effect if possible.

2. Gas—Franchise Held Not to Create Absolute Liability to Furnish Gas at Certain Pressure.—A franchise to a gas company, providing that it supply as much as 12,000,000 cubic feet of gas per day to the inhabitants of the city at a pressure at no time of less than 3 ounces to the square inch at the point of consumption, held not to create an absolute liability to supply gas at such pressure, in view of a provision therein that the company "shall take all reasonable precautions and measures necessary to furnish natural gas hereunder," and the company was excused from absolute compliance where on account of war there was a great drain on the gas fields which lowered the pressure and the company was unable to have gas compressors manufactured because manufacturers were engaged in manufacturing war munitions, and a consumer was not entitled to damages by reason of the low pressure.

3. Gas—Cost of Furnace Not Proper Item of Recovery for Failure to Supply Gas.—In an action against a gas company for damages for failure to supply gas at the pressure provided by franchise, an instruction was erroneous which authorized a finding for plaintiff of the cost of a coal furnace as an item of damages, where the furnace was not installed until several months after shortage of gas ceased, and the furnace still remains so that it may be used in an emergency.

4. Gas—Special Damages for failure to Furnish Gas Improper in Absence of Allegation.—In an action against a gas company for damages for failure to supply gas at franchise pressure, an instruction allowing a recovery for diminution in the use of plaintiff's house was error, where his pleading did not allege any such special damages.

5. Gas—Trial—Instruction on Damages for Failure to Supply Gas Held Erroneous and Not Cured.—In an action for damages for failure to supply gas at franchise pressure, an instruction allowing a recovery for repairing bursted water pipes was erroneous, where it did not further provide that plaintiff was not entitled to damages in such respect if they resulted from his negligent failure to turn the water from the pipes, and such error was not cured by another instruction which only authorized a diminution of the damages for failure of plaintiff to exercise ordinary care to minimize them.

6. Gas—Franchise Provision as to Discounts on Reduction of Service Below Minimum Held Not to Take Away Right to Damages.—A provision in a franchise to a gas company, stipulating discount in monthly rate for a reduction of the service below the minimum provided, held not to take away from a consumer the right to recover consequential damages for the company's negligent failure to comply with its obligations to supply gas at a certain pressure.

7. Gas—Company May Not Exact Different Terms than those Provided in Franchise.—A gas company has no right to demand or exact terms different than those provided for in its franchise as a condition precedent to furnishing a consumer with gas, where the imposed conditions go beyond regulatory rights and seek a modification of the terms of the grant.

MATT O'DOHERTY, ALEX. P. HUMPHREY and CUMMINS, ROEMER, FLYNN & McKENNA for appellant.

GROVER G. SALES and BRUCE, BULLITT & GORDON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Granting motion for an appeal, and reversing the judgment.

The appellee and plaintiff below, John Sherman, during the winter of 1917-18 and prior thereto owned a residence in the city of Louisville, which was equipped with plumbing and fixtures to use gas fuel for heating and domestic purposes. The gas used by him was furnished by the appellant and defendant below, Louisville Gas and Electric Company, under the terms of a franchise granted to it by the city of Louisville pursuant to an ordinance passed by the city council on March 29, 1913. Section 6 of the franchise ordinance provided, among other

things, that the grantee of the franchise (defendant herein) after it installed and began the operation of its plant should supply for the benefit of the consuming inhabitants of the city, as much as 12,000,000 cubic feet of gas per day, and section 8 of the ordinance provided, among other things, that the pressure of gas should at no time be less than three ounces to the square inch at the point of consumption. The two sections are copied in full in the opinion in the case of Louisville Gas and Electric Company v. National Surety Company, et al., 191 Ky. 797, to which reference is made, and they will not be inserted in this opinion. During parts of December, 1917, and parts of January, and February, 1918, there was not furnished by defendant to the city of Louisville for the use of its inhabitants as much as 12,000,000 cubic feet of gas per day, nor was the pressure at the point of consumption during those periods as much as three ounces.

Plaintiff filed this action against defendant to recover damages for such failures and upon trial the jury, under the instructions given by the court, returned a verdict in his favor and assessed his damages at $275.00. The court overruled defendant's motion for a new trial and rendered judgment upon the verdict. Defendant filed a transcript of the record in this court accompanied with a motion for an appeal, urging through its counsel a number of grounds as reversible errors.

Besides denying some of the material averments of the petition the answer contained two other paragraphs to which the court sustained demurrers of which complaint is made on this appeal. A common allegation to both of those paragraphs was that the franchise ordinance provided for defendant to obtain its supply of natural gas from the West Virginia gas fields, which it had done; that owing to conditions brought about by the World War there was an unusual draft upon those fields in the latter part of the year 1916 and the first part of the year 1917, so much so as to produce a noticeable diminution of the pressure, and that defendant, in order to provide against such conditions, caused to be placed with the most competent manufacturers of the country an order for the construction and installation of gas compressers to enable it to furnish to the consumers of the city of Louisville the requisite quantity of gas per day as well as the required pressure at the point of consumption; that before those manufacturers could complete and install the compressers, so ordered, the United States government

became involved in war with the German empire and immediately thereafter commandeered not only the manufacturers so selected and employed but all others similarly engaged throughout the country and forced them to cease other private manufacturing and to operate their plants in the manufacturing of war munitions for the conduct of the war, and because of such facts its failure in the respects relied on was due to an impossibility of performance.

In another paragraph, in addition to the foregoing, it relied on section 12 of the franchise ordinance, which, among other things, provided that "The object of the franchise hereby created is to make available for the people of Louisville natural gas at a rate commensurate with the cost of natural gas to the people of other cities similarly situated and below the cost of manufactured gas, and *said grantee shall take all reasonable precautions and measures necessary* to furnish natural gas hereunder, during the life of this franchise" (our italics); and it averred that it had taken all reasonable precautions to comply with the terms of its franchise, but because of the foregoing facts, which as alleged were not due to or produced by any fault or negligence on its part, it was prevented from doing so during the times of which complaint is made in the petition, and that as soon as possible after the manufacturers were allowed to do so by the government the requisite compressors were installed and since then the required quantity of gas and pressure had been furnished.

In support of the first paragraph, to which a demurrer was sustained, *i. e.,* the one relying on impossibility of performance, many authorities are cited and much learned discussion is indulged in; but, since we have concluded that the franchise ordinance, as qualified by the above excerpt from section 12 thereof, did not create an absolute liability on the part of defendant to perform its otherwise absolute terms, and did not make it an insurer of the performance of its obligations thereunder assumed, it will be unnecessary to discuss or to determine the merits of that paragraph relying on such impossibility of performance, since that question is not here if section 12 of the ordinance has the effect of reducing the duty of defendant from that of an absolute insurer and to impose on it only the duty of exercising "reasonable precautions," or in other words, ordinary care to perform its obligations under its franchise.

In determining that question we should be governed by the rule that in construing statutes, ordinances, contracts and all written agreements, all of the terms and provisions contained therein should be looked to and every part thereof should be given some effect if possible. In other words, the universal rule is that no part of a statute or writing to be construed should be discarded, but, on the assumption that all parts thereof were employed for some purpose, they should be given the interpretation that would carry out that purpose. Such fundamental rules of interpretation are of such long standing and universal application that we deem it unnecessary to insert supporting authorities. If the requirement in section 12 of the ordinance, that the grantee (defendant) "shall take all reasonable precautions and measures necessary to furnish natural gas hereunder," does not have the effect to relieve the defendant from an insurer against any violations of the obligations of the ordinance it is difficult to perceive the object and purpose of its insertion therein. Indeed, if the language should not be given that effect, the city council that passed the ordinance would necessarily be guilty of employing it to no purpose whatever, which would at once violate the fundamental rules of interpretation above referred to. If need be that conclusion could be fortified by a consideration of the circumstances, situation and conditions of the parties and the attributes of the subject matter of the contract as they existed at the time.

Briefly stated they were, that the city was wanting to arrange for the supplying of natural gas to its inhabitants. The most available field from which the supply could be obtained was West Virginia. The commodity contracted for was universally known to be a fugitive substance of uncertain duration. Under the assumed obligations of the ordinance by the grantee, several millions of dollars had to be expended in bringing the gas to the city, which did not include any of the additional heavy outlay in preparing for its distribution to the inhabitants after its arrival. The contract extended over a period of twenty years and it is difficult for us to perceive how a grantee possessing sufficient means and business ability to take even the first required step towards carrying out the purpose of the franchise would obligate himself or themselves to insure *at all times* throughout the twenty years the requisite supply and pressure. On the con-

trary, it would more readily comport with approved business methods that the grantee would do no more than agree to exercise reasonable precautions to fulfill the terms of the contract, and it would likewise comport with such business methods that the city would demand no more than that; and so we conclude that the inserted language from section 12 of the ordinance was born of such business methods to provide against uncontrollable contingencies.

We, however, are not dependent alone upon our own reasoning, as if this case was one of first impression, since this court in the case of Springfield Fire and Marine Insurance Co. v. Graves County Water and Light Co., 120 Ky. 40, had a question before it, which to our minds, as we interpret the opinion, is on all fours with the question here presented, the only difference being that the commodity to be furnished in that case was water while here it was gas. The franchise ordinance in that case absolutely required a constant pressure of water to a stipulated standard for the purpose of extinguishing fires, and that case and others preceding it, beginning with Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340, as well as succeeding ones, held that the citizen could maintain an action to recover damages for a violation of the franchise contract, on the theory that it was made by the city for his use and benefit. By section 8 of the franchise ordinance there involved, it was provided in substance that the water company should be relieved of its otherwise absolute franchise obligation, if it was prevented from doing so, "by accident or other cause than willful negligence" on its part. It relied in its answer on that section, and alleged facts showing that the failure to furnish the supply of water on the occasion complained of was not due to its negligence. The trial court so instructed the jury and it returned a verdict in favor of defendant and that judgment was affirmed. It was therein contended, as is also done here, that the grantee of the franchise assumed an absolute liability, but in denying that contention this court said:

"Certainly the parties, in entering into this contract, did not intend it to have that meaning and effect. If appellant's contention be correct—that appellee was bound at all hazards to furnish water, the act of God or the public enemy alone excusing

it—then why specify in the contract the character and dimensions of the standpipe, the size of and the depth to which the water mains were to be laid under cover, the character and number of pumps, engines, the public test, and requirements of it, and especially why incorporate the language as used in section 8, and the other things specified in the ordinance? If appellant's contention be correct, all these things were useless and superfluous. In such cases the only contract necessary would have been for the appellee to have bound itself to furnish at all times a supply of water sufficient to throw three simultaneous streams through a 1-inch ring nozzle to a height of 80 feet in the business part of the city, or to have obligated itself to furnish a supply of water sufficient for the uses of the city and the citizens, and an amply supply to put out fire.''

Other authorities sustaining the same view could be cited, but we deem it unnecessary, since we regard the case referred to as conclusive upon the question, and we have been unable to find any to the contrary. The court, therefore, erred in sustaining the demurrer filed to the paragraph of the answer relying upon the provisions of section 12 of the ordinance, since the excuse set forth in that paragraph and heretofore referred to, i. e., the commandeering of the manufacturers of compressors by the United States government, coupled with the prior efforts of defendant to install the compressors, was, if true, sufficient, as we conclude, to relieve defendant from the omissions complained of, and consequently the paragraph presented on its face a defense to the action. Allanwilde Transport Corporation v. Vacuum Oil Company, 248 U. S. 377, 3 A. L. R. 15, and annotated note. That conclusion, as we have hereinbefore stated, renders it unnecessary to consider the paragraph of the answer relying upon impossibility of performance, because if the alleged facts constituting the impossibility relied on be true, they would likewise furnish a defense under section 12 of the ordinance.

But, it is insisted that this court in the recent case of Louisville Gas and Electric Company v. City of Louisville, 191 Ky. 797, held otherwise, because on a petition for a modification of the opinion therein as first drafted, that portion of the original draft upholding the defense

above discussed was stricken therefrom. In the opinion as first prepared (and which was later stricken therefrom) it was said: "The (franchise) contract placed upon the gas company the duty and burden of using all reasonable means at its command to obtain and furnish to the said city, daily when required that amount of gas . . . and it is not liable in this action either on the contract or bond if it lived up to the terms of the bond or if after the exercise of reasonable diligence and the use of all reasonable means at its command, it was unable to obtain a supply of gas sufficient to do so." The contention is here made that the court by striking out that portion of the original opinion at least impliedly held that the franchise contract imposed an absolute liability on defendant. Counsel, however, is mistaken in that conclusion, since the fact is that the opinion was modified by striking out the above excerpt because it went farther than the necessities of the case required, as an examination of the opinion will demonstrate; and on petition for modification it was held that the stricken language would have been an adjudication upon a question not necessarily presented. For that reason alone the petition for a modification was sustained and the above language was stricken from the opinion. That case was a suit by the city to recover on the $250,000 bond provided for in section 6 of the ordinance relating to the laying of the pipe line from the source of supply to the city of Louisville, and in the course of the opinion, after reciting the facts, it was said: "This litigation only calls for a correct construction and interpretation of the franchise ordinance, especially section 6 thereof and the bond sued on;" and it was stated further along in the opinion that the bond which was the basis of the suit was not as broad as the franchise contract and had no reference to the duties and obligations of the defendant as to the furnishing of gas to the inhabitants of the city after the supply was brought to the city in accordance with the terms of the franchise. We do not regard that opinion as decisive of the question.

Instruction number 1 given by the court was in effect a direction to find for plaintiff, under the assumption that the franchise contract imposed upon it the obligation of insurer which, as we have seen, was error. It also authorized a finding in favor of plaintiff as an item of damages $450.00 representing the cost of installing a coal furnace in his house, which, under the proof, was not

done until several months after the shortage of gas ceased. This was error, since there is absolutely no evidence to show that such expense was necessary to or had any effect upon relieving the consequences of the violations complained of. Plaintiff still has his coal furnace to be used in an emergency and in as much as none of its cost price was incurred in relieving the shortage of gas and pressure, for which damages were claimed, it is not a proper item of recovery and should not have been submitted to the jury. The instruction also allowed a recovery for diminution in the use of plaintiff's house during the times complained of, although his pleading did not allege any such special damages, which was also error. The instruction also allowed a recovery of an item of $125.00 for repairing bursted water pipes, and it is complained that nothing should be allowed for that item, since plaintiff left his house unheated and failed to turn the water therefrom. It is, however, insisted by plaintiff's counsel that instruction number 2 given by the court cured the error complained of with reference to that item, but that instruction only authorized a *diminution* of the damages for the failure of plaintiff to exercise ordinary care to minimize them and did not authorize the jury to return no damages for that item if they were produced by his negligence, and since there was evidence to show that the bursting of the pipes was caused by his failure to turn the water therefrom, the court should have said to the jury that he could recover nothing therefor, if they believed that it resulted from such negligent failure.

It is further relied on as a defense that section 8 of the franchise ordinance, a copy of which will be found in the 191 Ky. opinion, *supra,* provided for liquidated damages resulting from failures of the grantee to comply with the franchise grant. That section in part provides for a reduction in the rates upon a failure to furnish the quantity and pressure provided for in the ordinance for as long as certain designated periods. It was alleged in the answer that plaintiff, during the times complained of, was given the benefit of those reductions and that he settled his monthly rates upon the reduction basis, which, as defendant contends, was a complete settlement of all the damages to which he was entitled and which was the exclusive relief provided by the franchise contract. We are, however, not convinced that the section of the ordinance relied on is susceptible of that interpretation. It

provided fõr only a stipulated discount in the monthly rate for a reduction of the service below the minimum provided for and it necessarily follows that if there was no service there could be no charges collected; in which event, if defendant's contention is correct, there would likewise be no cause of action.  Manifestly that was not the intent and purpose of the discount provided for by the section.   One of the learned circuit judges of the Jefferson circuit court, in construing that section, said: "It is manifest from the stipulations in the ordinance that the gas is less serviceable when the pressure is below the minimum," and he construed the language to provide for a reduction of the rate to meet the reduced value of the service.  Another one of the learned judges of the same court, in construing the same section, said: "This (the discounts provided for) does not furnish a complete remedy. It merely reduces the consumer's payment as the service is reduced.  It gives him no remedy at all for total failure of service beyond relieving him for paying what he does not get."  We concur in those interpretations, and hold that the reductions provided for in section 8 of the ordinance do not take away from the consumer the right to recover consequential damages for a negligent failure to comply with the grantee's obligations under the ordinance.

The last question to be considered is the reliance by both parties upon a special contract, the plaintiff claiming that he was induced to equip his house with gas fixtures only upon representations and agreements of defendant that the stipulated quantity of gas would be continuously furnished thereafter; but the evidence introduced to support that contention was wholly insufficient for the purpose, to say nothing of the fact that it was not incorporated in plaintiff's written application for the furnishing of gas in his premises.  The special contract relied on by defendant contained certain stipulations which it claims constitute a defense, but if we should concede that the relied on conditions and stipulations were sufficient for that purpose (a question not determined) we are not inclined to the opinion that it was competent for defendant to exact such stipulations from the consumer contrary to the obligations assumed by it in the franchise ordinance, since when it accepted the franchise it became obligated to furnish to the inhabitants of the city the commodity with which it dealt upon

the terms and conditions therein specified and which were imposed for the use and benefit of the customer; and it, therefore, did not have the right to demand or exact different terms as a condition precedent to furnishing the consumer with gas, where the imposed conditions went beyond regulatory rights and sought a modification of the terms of the grant.

Wherefore, the motion for the appeal is sustained and the appeal is granted, and the judgment is reversed with directions to sustain the motion for a new trial and for proceedings consistent with this opinion. Whole court sitting except Judge O'Neal, who was not a member at the time the case was considered and determined.